1  **BARNES & THORNBURG LLP**
Lilit Asadourian (SBN 208801)
2  *lasadourian@btlaw.com*
Alice Kyureghian (SBN 300972)
3  *akyureghian@btlaw.com*
2029 Century Park East, Suite 300
4  Los Angeles, CA 90067-3012
Telephone: 310-284-3880
5  Facsimile:  310-284-3894

6  Janice L. Chase (SBN 352143)
*janice.chase@btlaw.com*
7  655 W. Broadway Ste. 133
Telephone: 619-321-5000
8  Facsimile: 310-284-3894

9  *Counsel Plaintiff BloomTech Inc.*

10              **UNITED STATES DISTRICT COURT**

11        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13

14  BLOOMTECH INC. f/k/a LAMBDA INC.  | Case No.   25-cv-0815

15              Plaintiffs,  | **COMPLAINT FOR:**
        v.
16  RSUI INDEMNITY COMPANY;  | **1)  BREACH OF CONTRACT**
WESTERN WORLD INSURANCE  | **2)  BREACH OF THE IMPLIED**
17  COMPANY; HALLMARK SPECIALTY  | **COVENANT OF GOOD FAITH**
INSURANCE COMPANY; ANV  | **AND FAIR DEALING; AND**
18  GLOBAL SERVICES INC,  | **3)  DECLARATORY RELIEF**

19              Defendants.

20

21

22

23

24

25

26

27

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT**
**Case No.:** 25-CV-0815

**COMPLAINT**

Plaintiff BloomTech Inc., formerly known as Lambda Inc.[1], ("Plaintiff" or "BloomTech") alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an insurance coverage action to recover more than $2 million in defense costs and indemnity for underlying claims against the Plaintiff BloomTech and its CEO and founder, Austen Allred.  For almost four years, Defendants wrongfully and unreasonably denied their duty to defend and refused to stand behind their insured during its time of greatest need. Only after BloomTech retained insurance counsel did the insurers finally acknowledge their defense obligations in the Fall of 2024, three and a half years after receiving notice of the first claim.  But even then, the pattern and practice of delay and denial continued.  To date, BloomTech has not been reimbursed a single cent of its defense costs or settlement payments.  Even worse, even though the primary insurer agreed in Sept. 2024 to defend BloomTech, it left BloomTech without counsel just weeks before a scheduled arbitration hearing and refused to settle the claims for a reasonable amount, leaving both the company and its CEO exposed to judgments that may exceed policy limits.  BloomTech brings this action to adjudicate its rights under the insurance policies and to seek compensatory, consequential and punitive damages for the insurers bad faith breach of their insurance obligations.

2.      BloomTech is a San Francisco based company that offers online technology learning courses on a for-profit basis. BloomTech is a privately held start-up company that does not have the cashflow to continue defending itself against the subject claims and, without insurance, may be forced into insolvency.

3.      To protect the company and the individual officers and directors, BloomTech purchased a $ 4 million tower of private company Directors and Officers

---

[1] On November 29. 2021 BloomTech filed an "Amended Statement by Foreign Corporation (Name Change ONLY)" with the California Secretary of State showing it had changed its name from "Lambda Inc." to "BloomTech Inc."

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

("D&O") management liability insurance from RSUI Indemnity Company ("RSUI"), Western World Insurance Company ("AIG"), Hallmark Specialty Insurance Company ("Hallmark"), and ANV Global Services Inc. ("ANV") (collectively the "Insurers" or "Defendants") for the 2020-2021 policy period (the "Policies").

4.      Despite the tens of thousands of dollars BloomTech paid the Defendants in premiums, and its reasonable expectation that the Defendants would in turn provide coverage in the event of a claim, the Defendants have denied coverage for multiple, related matters that together constitute one "Claim" under the Policies.

5.      As a result of the Defendants' wrongful refusal to honor their obligations, including their duty to defend and a duty to indemnify, BloomTech has incurred hundreds of thousands of dollars in covered defense and settlement costs that the Defendants refuse to reimburse.

6.      BloomTech now brings this action to enforce the Defendants' duties under the Policies.

## THE PARTIES

7.      Plaintiff BloomTech is, and at all relevant times has been, a corporation with its principal place of business in San Francisco, California.

8.      The Insured is informed and believes, and on the basis of such information and belief alleges, that Defendant RSUI is, and at all relevant times has been: (a) a company organized under the laws of the State of New Hampshire; and (b) is engaged in the business of providing insurance to persons and entities in San Francisco County, California.

9.      The Insured is informed and believes, and on the basis of such information and belief alleges, that Defendant AIG is, and at all relevant times has been: (a) a company organized under the laws of State of New Hampshire; and (b) is engaged in the business of providing insurance to persons and entities in San Francisco County, California.

10.      The Insured is informed and believes, and on the basis of such information

2

and belief alleges, that Defendant Hallmark is, and at all relevant times has been: (a) a company organized under the laws of the state of Oklahoma; and (b) is engaged in the business of providing insurance to persons and entities in San Francisco County, California.

11.    The Insured is informed and believes, and on the basis of such information and belief alleges, that Defendant ANV is, and at all relevant times has been: (a) a company organized under the laws of State of New York; and (b) is engaged in the business of providing insurance to persons and entities in San Francisco County, California.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity between the Plaintiff and all Defendants and the amount in controversy exceeds $75,000.

13.    As set forth herein, this Court has specific personal jurisdiction over each of the Defendants because each has sufficient minimum contacts with the State of California to satisfy California's long-arm statute and constitutional due process requirements.

14.    Venue is proper within the Northern District of California pursuant to 28 U.S.C. §1391(b), because this is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL BACKGROUND

### A. The Policies

15.    RSUI issued policy no. PP688513 to BloomTech for the policy period incepting on July 31, 2020 through July 31, 2021 (the "RSUI Policy"). This is a "claims made and reported policy" which provides a $1 million D&O limit of liability, subject to a $100,000 retention. Attached hereto as **Exhibit A** is a copy of the RSUI Policy.

16.    The RSUI Policy is a duty to defend policy that states "It shall be the right and duty of the Insurer to defend any Claim against any Insured for which coverage

3

**COMPLAINT**
**Case No.:** 25-CV-0815

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

applies under this policy[,]"[2] and "the Insurer will pay on behalf of such Insured Person all Loss such Insured Person is legally obligated to pay."[3]

17.    The RSUI Policy defines "Claim" in relevant part as "[a] written demand for monetary or non-monetary relief[,]" "[a] civil, criminal, administrative, regulatory or arbitration proceeding, or arbitration demand for monetary or non-monetary relief[,]" or "A civil, criminal, administrative or regulatory investigation of an Insured Person by the Securities Exchange Commission ("SEC") or similar state or foreign government authority, after the Insured Person is identified in a written "Wells" or other notice from the SEC or a similar state or foreign government authority that describes actual or alleged violations of laws by such Insured Person[.]"[4]

18.    The RSUI Policy states that "[a]ll Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim for all purposes under this policy . . . and shall be deemed first made when the earliest of such Claims is first made[.]"[5]

19.    Western World Insurance Co. (an AIG company) issued first excess policy no. PDX0000148 for the policy period incepting on July 31, 2020 through July 31, 2021 (the "AIG Policy"). This policy follows-form to the terms and conditions of the RSUI Policy, and provides a $1 million limit of liability in excess of $1 million of Underlying Insurance. Attached hereto as **Exhibit B** is a copy of the AIG Policy.

20.    The AIG Policy provides that "The coverage obligations under this Policy attach only after: (i) the Underlying Limits have been fully exhausted from actual payment made ***by the Underlying Insurers, the Insured, or by others on behalf of the Insured***, including any DIC Insurer, of amounts covered under the Followed Policy; and

---

[2] Exhibit A, Section V.(A).
[3] *Id.*, Section I.(A).

[4] *Id.*, Section III.(A).
[5] *Id.*, Section V.(B)(4).

**COMPLAINT**
**Case No.:**  25-CV-0815

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

(ii) satisfaction of any retention, deductible, or coinsurance obligation required by the Underlying Insurance."[6]  Once this condition is met, the AIG Policy "shall apply as primary insurance."[7]  Despite the fact that the Insured has paid Loss in excess of the Underlying Insurance limits and has satisfied the retention, AIG has refused to provide coverage within its excess layer.

21.    Hallmark issued second excess policy no. 74PV000654-1 for the policy period incepting on July 31, 2020 through July 31, 2021 (the "Hallmark Policy"). This policy offers follow-form coverage over the RSUI Policy, and provides a $1 million limit of liability in excess of $2 million of underlying insurance. Attached hereto as **Exhibit C** is a copy of the Hallmark Policy.

22.    ANV issued third excess policy no. ANV142193A for the policy period incepting on July 31, 2020 through July 31, 2021 (the "ANV Policy"). This policy offers follow-form coverage over the RSUI Policy, and provides a $1 million limit of liability in excess of $3 million of underlying insurance. Attached hereto as **Exhibit D** is a copy of the ANV Policy.

**B. The Claims Under the Policies**

**1. The CFPB Civil Investigative Demand**

23.    On or about November 5, 2020, the Insured received a Civil Investigative Demand from the Bureau of Consumer Financial Protection seeking documents and testimony regarding its marketing practices and business model (the "CFPB CID"). The Insured provided notice of the CFPB CID to RSUI on December 2, 2020.

24.    On December 11, 2020, RSUI sent a letter to the Insured stating that a Claim had not yet been made against an Insured under the Policy, but that it would accept the CFPB CID as a notice of circumstance under the policy.

25.    A consent order was issued with regard to this matter on April 17, 2024.

---

[6] Exhibit B, Section I.
[7] *Id*., Section IV.(C).

**COMPLAINT**
**Case No.:** 25-CV-0815

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

26.     As of the filing of this complaint, RSUI has never accepted coverage for the CFPB CID.

## 2. The CDFPI Request

27.     On or about January 14, 2020, BloomTech received an information request from the California Department of Financial Protection and Innovation (the "CDFPI Request"), regarding BloomTech's cost and financing options for its educational programs.

28.     BloomTech provided notice of the CDFPI Request to RSUI on July 19, 2021.

29.     In a letter dated August 4, 2021, RSUI stated that a Claim had not yet been made against an Insured under the Policy. RSUI further stated that, even if a Claim had been made, coverage was barred by certain exclusions in the RSUI Policy, including the Exclusion-Regulatory endorsement, the Absolute Contractual Exclusion endorsement, Exclusion-Broadcasting, Advertising, and Publishing Liability Endorsement, and Section IV. – Exclusion 12.b. which excludes coverage for "actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships[.]"

30.     As of the filing of this complaint, RSUI has never accepted coverage for the CDFPI Request.

## 3. The Illinois Civil Investigative Demand

31.     On or about January 25, 2021, BloomTech received a Civil Investigative Demand from the Illinois Attorney General (the "IL CID"), regarding BloomTech's cost and financing options for its educational programs.

32.     BloomTech provided notice of the IL CID to RSUI on July 19, 2021.

33.     Again, in its letter dated August 4, 2021, RSUI took the same position with regard to the IL CID as it did to the CDFPI Request.

**COMPLAINT**
**Case No.:**   25-CV-0815

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

34.     In a letter dated August 14, 2023, RSUI stated that the IL CID and the CFPB Claim "appear to be based on and aris[ing] out of the same or similar alleged facts, circumstances, situations, transactions, or events" and thus RSUI would be handling the two matters under a single file. RSUI again stated no Claim had been made as defined in the RSUI Policy, and again recited the above policy exclusions that it deemed as precluding coverage. RSUI further stated in this correspondence that it intended to close its file shortly.

### 4. Nye, Stickrod, Velasquez, and Nguyen Demands

35.     In or around May 2021, BloomTech received four individual arbitration demands from former students – Nye, Stickrod, Velasquez, and Nguyen.

36.     BloomTech tendered defense of Nye, Stickrod, and Nguyen to RSUI on June 17, 2021, and tendered defense of Velasquez to RSUI on July 19, 2021. RSUI denied coverage for these demands on July 2, 2021. Having received a denial of coverage and left to defend itself, BloomTech settled Nye, Stickrod and Nguyen in or around July 2022, and settled Velasquez in or around May 2022.

37.     RSUI denied coverage, and its duty to defend, for these matters on the following grounds: (1) Absolute Contractual Exclusion, (2) Exclusion 12.b of the Directors and Officers Liability Coverage Section, and the (3) Broadcasting, Advertising and Publishing Liability exclusion.

38.     In a January 13, 2025 letter, nearly 4 years after tender, RSUI took the position that it will pay only a 20% "allocated share of the post-tender defense fees and costs" related to Nye, Stickrod, Velasquez and Nguyen. Attached hereto as **Exhibit E** is a copy of the January 13, 2025 RSUI letter.

### 5. The Fuller Class Action

39.     On or around March 27, 2023, a class action was filed wherein the named plaintiff was Jessica Fuller ("Fuller Class Action"). The Fuller Class Action contained allegations regarding BloomTech's approval to operate in California, job placement rates, and what the Fuller Class Action complaint termed "the unlawful business practice

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT**
**Case No.:** 25-CV-0815

of unlicensed lending." The Fuller Class Action named both BloomTech and its founder Austen Allred.

40.     The Fuller Class Action was dismissed following a motion to compel arbitration in or around January 2024.

41.     In a letter dated May 14, 2024, RSUI denied coverage for the Fuller Class Action on the same grounds as its denial of the Nye, Stickrod, Velasquez, and Nguyen Arbitration Demands: (1) Absolute Contractual Exclusion, (2) Exclusion 12.b of the Directors and Officers Liability Coverage Section, and the (3) Broadcasting, Advertising and Publishing Liability exclusion.

42.     In November 2024, RSUI attempted to claim that its denial of the Fuller Class Action was due to BloomTech's untimely tender, even though this purported defense was not raised in RSUI's May 14, 2024 letter and even though RSUI had received notice of every prior related matter and had denied coverage for each of them.

43.     RSUI's bad faith in asserting this position regarding untimely tender is further evidenced by the fact that RSUI acknowledged the Fuller Class Action related back to the Nye, Stickrod, Nguyen and Velasquez demands and therefore would be treated as one "Claim" under the policy, stating the following in its May 14, 2024 letter:

> Because the [Nye, Stickrod, Nguyen, and Velasquez] Demands and the [Fuller] Lawsuit are based on, arise out of, directly or indirectly result from, are in consequence of, and/or in any way involve the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations transactions or events, the Demands and Lawsuit are deemed a single Claim pursuant to Section V. – Condition B.4, and are being handled under the same RSUI File No., 703-159237.

### 6. The ISA Demands

44.     BloomTech continued to receive, defend and settle additional arbitration demands, including an additional eight Demands for Arbitration filed in 2024 before the American Arbitration Association. (collectively the "ISA Demands").

45.     These demands are styled as follows: *Jessica Fuller v. Bloom Institute of Technology*, filed February 14, 2024; *Rob Bennett v. Bloom Institute of Technology*, filed

8

February 14, 2024; *Alexander Goncalves v. Bloom Institute of Technology*, filed March 12, 2024; *Harrison Aguiar v. Bloom Institute of Technology*, filed March 12, 2024; *Matthew Means v. Bloom Institute of Technology*, filed March 12, 2024; *Yeraldina Estrella v. Bloom Institute of Technology*, filed March 12, 2024; *Brett Mcadams v. Bloom Institute of Technology*, filed April 5, 2024; *Kyle Willard v. Bloom Institute of Technology*, filed May 28, 2024. Attached hereto as **Exhibit F** are copies of the ISA Demands.

46.    The ISA Demands alleged, as RSUI phrased it in its September 26, 2024 letter, "substantially the same practices" as the Fuller Class Action. Attached hereto as **Exhibit G** is a copy of the September 26, 2024 RSUI letter.

47.    This includes that, BloomTech operated without California approval for a period, that it allegedly misrepresented its status to students during this time, that it engaged in improper practices with regard to tuition, that it was improperly making loans to students, and that it made certain misleading statements to students with regard to its "income sharing" processes and its job placement rates.

48.    The ISA Demands named both BloomTech and its founder Austen Allred, despite the fact that there is no evidence of any individual wrongdoing by Allred.

49.    The ISA Demands were all filed by the National Student Legal Defense Network ("NSLDN"), which, on information and belief, is a lobbyist group based in Washington, D.C. that describes itself as "a non-partisan, non-profit 501(c)(3) organization that works to advance students' rights to educational opportunity and to ensure that higher education provides a launching point for economic mobility."

50.    BloomTech provided notice of the ISA Demands to RSUI no later than July 17, 2024.

51.    Exasperated by RSUI's pattern of bad faith conduct and on the brink of financial demise, BloomTech retained insurance coverage counsel to help it pursue its rights under the Policies. On July 17, 2024 BloomTech's insurance coverage counsel wrote to RSUI disputing its years of denial of coverage and demonstrating that RSUI, at

9

**COMPLAINT**
**Case No.:** 25-CV-0815

a minimum, had a duty to defend BloomTech.  After three and half years of denials of coverage for the Fuller Class Action and the Nye, Stickrod, Nguyen and Velasquez claims, RSUI then suddenly reversed course and accepted its defense obligations, in part, under a reservation of rights in a letter dated September 26, 2024.

52.    In this same letter, RSUI again conceded that the Nye, Stickrod, Nguyen, and Velasquez Demands, the Fuller Class Action, *and* the ISA Demands are all related, stating:

> "[BloomTech] received arbitration demands related to *substantially the same practices* discussed below [the Fuller Class Action and ISA Arbitration Claims] from Heather Nye, Johnathan Stickrod and Ninh Nguyen."

53.    RSUI's decision to accept its duty to defend with respect to the ISA Demands means it must also accept its duty to defend BloomTech with respect to the prior related Nye, Stickrod, Nguyen, and Velasquez demands, the Fuller Class Action, and all other related matters that BloomTech defended and settled without RSUI's support.

54.    In a letter dated December 11, 2024, BloomTech delivered copies of its then outstanding defense bills and asked for RSUI to reimburse it fully in the amount of $785,896.82 for defense costs incurred in defending itself against Nye, Stickrod, Nguyen, Velasquez and related arbitrations, the Fuller Class Action, and the more recent ISA Demands.  BloomTech also asked for reimbursement of $548,077 in prior settlement payments made in these matters, and for a call with RSUI to discuss potential settlement of the ISA Demands still pending.

55.    On a call with both BloomTech's defense and coverage counsel on December 27, 2024 to discuss potential settlement of the pending ISA Demands as a means of heading off costly arbitration, counsel for RSUI acknowledged that BloomTech's losses as set forth in BloomTech's December 11ᵗʰ letter would exceed the RSUI limits and encouraged BloomTech to seek authority to settle from the excess carriers. BloomTech understood this to mean that RSUI had committed to paying its policy limits, given the defense costs outstanding and the prior settlements, that well

1  exceeded the $1M RSUI Policy limit.

2      56.    In light of such reliance, coverage counsel relayed this information to the

3  excess carriers in a later call. Subsequent to this call with the excess carriers, AIG

4  authorized a settlement of the ISA Demands.

5      57.    Despite its prior representations to coverage counsel and its acceptance of

6  coverage under a reservation of rights, on January 16, 2025, in the midst of defense

7  counsel trying to settle the ISA Demands and actively seeking insurer consent to do so,

8  RSUI backtracked and claimed that it had not committed to paying its policy limits.

9  Thereafter, AIG withdrew its authority to settle, leaving BloomTech without any means

10 to settle the claims, just days away from trial.

11     58.    The settlement discussions subsequently fell apart due to the Defendants'

12 refusal to make a commitment to fund the settlement. Furthermore, upon learning that

13 the insurers would not reimburse BloomTech's defense fees in whole and would only

14 pay a portion of defense counsel's rates, BloomTech's longstanding defense counsel at

15 Pillsbury Winthrop Shaw Pittman, LLP informed BloomTech that it could no longer

16 represent BloomTech under the circumstances. RSUI finally appointed new counsel to

17 defend BloomTech just days shy from the arbitration hearing date, despite RSUI's clear

18 duty to appoint counsel in 2021 and its prior admission that it owed a duty to defend

19 BloomTech and its CEO.

20     59.    As evidenced above, despite RSUI's admission that it has a duty to defend

21 BloomTech, RSUI has engaged in bad faith tactics to eliminate or limit its

22 responsibilities with respect to each of the matters by taking the unreasonable and legally

23 baseless position that it is entitled to allocate between uncovered and covered claims and

24 that it is only required to reimburse BloomTech 20% of defense costs, which is just a a

25 fraction of its legal fees, incurred over a four year period and continuing.

26     60.    RSUI further takes the egregious position that despite that fact that it

27 repeatedly denied coverage for this Claim for over three years and anticipatorily

28 breached the policy, BloomTech was still required to thereafter notice each related

11

**COMPLAINT**
**Case No.:**  25-CV-0815

matter to RSUI, only for RSUI to deny coverage as it did with each matter that came before it.

61.     RSUI has also disclaimed coverage for all prior settlements and has refused to settle the ISA Demands, in violation of its contractual obligations and applicable law, which implies in every insurance contract a duty to accept a reasonable settlement that is within policy limits.

62.     Likewise, AIG has unreasonably refused to settle the ISA Demands within the AIG policy limits, even though it is clear that BloomTech has paid covered Loss in excess of the $1 million underlying limits.

## C. BloomTech's Defense of the Claims

63.     Due to RSUI's unreasonable and bad faith denial of its duty to defend and indemnify, the Insured has incurred over $1,000,000 defending itself against the ISA Demands for the past four years.

64.     In connection with its September 26, 2024 change in coverage position, RSUI stated that it would appoint another law firm to defend BloomTech. But RSUI denied consent to any additional fees and costs incurred by BloomTech's current counsel.

65.     In a letter dated January 13, 2025, RSUI took the position that defense costs were purportedly subject to allocation, that it would not reimburse for "pre-tender" defense costs, and that if BloomTech insisted on maintaining its long-term counsel, RSUI would only pay Pillsbury at rates of up to $300/hour, well short of the market rate for cases of this sophistication and complexity, where the CEO of BloomTech is also personally named as a defendant.  This coverage amount would *still* leave BloomTech in the position of paying hundreds of thousands of dollars out of pocket to keep its defense counsel, which BloomTech cannot afford.

66.     Now that BloomTech is nearing the end of its defense of the ISA Demands – with potential additional settlements and arbitration hearings on the horizon – it was

**COMPLAINT**
**Case No.:**   25-CV-0815

utterly improper and prejudicial for RSUI to cut off Pillsbury's representation and, at a minimum, should have immediately appointed replacement counsel.

67.    On January 15, 2025, with over $700,000 in unpaid legal fees, Pillsbury had no choice but to separate as BloomTech's counsel. BloomTech informed RSUI in an immediate January 15, 2025 letter that Pillsbury, its long-term counsel, had requested to be replaced by Insurer-appointed counsel as a result of RSUI's ongoing delay and refusal to reimburse defense costs. RSUI finally appointed new counsel to defend BloomTech and its CEO, less than a week away from trial.

68.    This came after several days of attempts by defense counsel to settle the ISA Demands, for which it had explicit consent from AIG, under a reservation of rights. Despite AIG's consent, RSUI refused to tender its limit in support of the settlement, which ultimately fell apart as a result of RSUI's and AIG's last minute decision to withdraw settlement authority. In its January 15, 2025 letter, BloomTech again asked RSUI to fund a global settlement of the ISA Demands. BloomTech also reiterated that without the Insurers, it is not in a position the self-fund a settlement and would be potentially faced with loss well exceeding the policy limits. RSUI continues to wrongfully deny this request.

69.    Further, as discussed above, RSUI has insisted on an unreasonable allocation of the defense costs, wherein it purports it is only obligated to pay 20% of the Insured's covered defense costs. This is unreasonable and inaccurate and violates clear California law that requires the insurer to defend fully.

70.    RSUI has also refused to reimburse fully for what it describes as "pre-tender" defense costs, even though it acknowledges that it first received a notice of circumstance for these claims in 2020 and thereafter has treated every new matter as being related and has aggregated all matters as one "Claim" under its policy.

71.    As a direct result of RSUI's failure to uphold its duty to defend and indemnify, BloomTech is now not only unable to settle the ISA Demands, it has also lost its trusted defense counsel a week before the first of the ISA Demands is set for

**COMPLAINT**
**Case No.:** 25-CV-0815

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

arbitration.

72.    Further, RSUI has slow rolled the transition to new defense counsel, leaving BloomTech and its CEO essentially unrepresented with less than a week until the first arbitration. It was not until Sunday January 19, 2025 that counsel for RSUI connected BloomTech with its new defense counsel, who then stated on January 20, 2025 that it was still waiting for "instructions from RSUI and [its counsel]'s office."

73.    Justifiably distressed, BloomTech reminded RSUI and new defense counsel that BloomTech had a scheduled pre-trial meeting with the arbitrator and opposing counsel on January 22, 2025, to which counsel for RSUI just said he'd "get back to" BloomTech after talking to the RSUI adjuster.

74.    In the midst of this back and forth, counsel for RSUI flippantly referred to Pillsbury's resignation as "petulant." Rather, Pillsbury's resignation was entirely foreseeable in light of RSUI's continued failure to defend or reimburse a single dollar of defense costs, and seemingly no promise of payment or settlement funding on the horizon.

75.    This complete disregard for BloomTech's reasonable sense of urgency and defense counsel's foreseeable withdrawal, combined with RSUI's habitual refusal to acknowledge its duty to defend, despite acknowledging that the claims are all related, supports an inference that RSUI never intended to provide BloomTech with coverage and willfully and maliciously set out to harm and prejudice its insured.

76.    RSUI has been uncooperative, uncommunicative, and unreasonable. As a result, BloomTech is now unnecessarily staring down the barrel of millions in additional defense and settlement expenses.

## COUNT I

### (Breach of Contract Against Defendants RSUI and AIG)

77.    The Insured incorporates by reference each and every allegation contained in Paragraphs 1 through 76 above as though fully set forth herein.

78.    As alleged above, the Insureds have been the subject of several litigations

14

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

1    and arbitrations that are all treated as one "Claim" under the Policies.

2         79.    The Insureds gave timely notice of the Claims to RSUI and AIG under their

3    respective policies.

4         80.    Under the RSUI and AIG Policies, Defendants were and are obligated, *inter*

5    *alia,* to fully defend and indemnify BloomTech with regard to the Claims, among other

6    policy benefits, since 2021.

7         81.    RSUI and AIG have failed and refused to comply with their duty to defend

8    and indemnify BloomTech with regard to the Claims, among other policy benefits.  The

9    Insured has received a settlement demand in connection with the Claims that would have

10   exhausted and/or implicated the limits of the RSUI and AIG Policies.  The Insureds

11   demanded multiple times that the RSUI and AIG acknowledge their duties and fund the

12   settlement of the ISA Demands, which settlement as noted above would have implicated

13   and/or exhausted the respective limits of their policies.  Though AIG consented at first,

14   it later withdrew its authorization when RSUI offered only hollow promises of consent

15   as it simultaneously refused to contribute to the settlement.  As a result, BloomTech was

16   not able to settle the ISA Demands and now BloomTech and its CEO face potential

17   liability in excess of the Policies' limits.  In addition, as a result of the Insurers' conduct,

18   BloomTech may become insolvent, exposing the Insurers to additional consequential

19   damages for the demise of the company.

20        82.    As a result of RSUI and AIG's breaches of their obligations under their

21   respective policies, the Insured has been improperly forced to bear, in addition to other

22   recoverable policy benefits, substantial fees and costs in the defense of the Claims and

23   substantial amounts in the settlement of the Claims, including but not limited to the ISA

24   Demands. The Insured has also incurred attorney's fees to retain insurance coverage

25   counsel to purse this bad faith action.

26        83.    The Insureds have duly performed all conditions required under the RSUI

27   Policy and AIG Policy, except for any that were excused by Defendants' breaches or

28   other conduct.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT**
**Case No.:**   25-CV-0815

84.    The aforesaid conduct of RSUI and AIG constitutes material breaches of their respective policies, including, without limitation, breaches of the duty to defend, the duty to indemnify, and to pay other recoverable policy benefits.

85.    As a direct and proximate result of RSUI and AIG's breaches of contract, the Insured has suffered and will suffer damages, plus prejudgment interest, in excess of the jurisdictional minimum of this Court in an amount no less than $1.5 million, and potentially in excess of the Policies' $4 million limits, to be proven at trial.

## COUNT II

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against RSUI and AIG)

86.    The Insured incorporates by reference each and every allegation contained in Paragraphs 1 through 85 above as though fully set forth herein.

87.    The RSUI Policy and AIG Policy each contain an implied covenant of good faith and fair dealing requiring, *inter alia*, that Defendants act in good faith and deal fairly with the Insured and take no action to interfere with the Insured's rights to receive benefits which it reasonably expects to receive under their policies.  RSUI and AIG have tortiously breached that implied covenant of good faith and fair dealing, as hereinabove alleged, in that they, among other things:

 a. Refused to timely accept the defense and indemnification of the Fuller Class Action, or Nye, Stickrod, Nguyen and Velasquez and other related arbitration matters;

 b. Issued inconsistent and unreasonable coverage positions wherein they failed to timely assert defenses and purported to relate Claims, while treating only some of the Claims as covered;

 c. Failed to thoroughly investigate the Claim and waited over three years to accept the defense of the ISA Claims, at which point the Insured had already incurred hundreds of thousands of dollars in defense costs, and then refused to fully reimburse the Insureds arguing that it is not

16

Barnes &
Thornburg LLP
Attorneys At Law
Los Angeles

responsible for pre-tender defense costs of matters for which it denied coverage;

d.  Refused to pay reasonable rates for the Insured's chosen counsel of over three years, at great detriment to the Insured's defense;

e.  Acted with such delay and unreasonableness so as to force the Insured's chosen defense counsel to resign for lack of payment;

f.  Failed to meaningfully consent to and fund a reasonable settlement of the ISA Demands, which would have prevented significant additional costs;

g.  Asserted an entirely unreasonable position with regards to allocation, only agreeing to pay for 20% of entirely covered defense costs, despite its acknowledgment of its duty to defend;

h.  In the case of AIG, failed to acknowledge that its excess policy had been triggered and unreasonably withdrew settlement authority, jeopardizing BloomTech's ability to settle the ISA Demands on the heels of trial.

88.    The Insured is informed and believes, and based thereupon allege, that RSUI and AIG have engaged in knowing, malicious, bad faith company-wide courses of conduct designed to intentionally and fraudulently deprive the Insured and Defendants' other respective policyholders of the benefits which those policyholders are entitled under various insurance policies issued by Defendants.

89.    As a direct, proximate and foreseeable result of the aforesaid intentional and wrongful conduct, the Insured has suffered consequential damages in excess of the jurisdictional minimum of this Court and in an amount to be proven at trial.

90.    In order to recover the benefits under the policies sought herein, and as a result of RSUI and AIG's bad faith and tortious breach of contract, the Insured has been and are forced to incur attorneys' fees, and related expenses and costs.

91.    The Insured is informed and believes, and on that basis alleges, that RSUI and AIG engaged in the aforesaid conduct: (a) with a willful and conscious disregard of

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT
Case No.:    25-CV-0815

the Insured's rights; (b) with the intent to injure the Insured; and (c) in order to subject the Insured to cruel and unjust hardships in disregard of its rights such as to constitute oppression, fraud and malice.

92.     The Insured is further informed and believes, and based thereon alleges that, RSUI and AIG engaged in a conscious disregard of Plaintiff's rights as part of a deliberate course of conduct firmly grounded in established company policy.  Despite being presented with evidence demonstrating that their denials of coverage are wrongful and erroneous, RSUI and AIG have refused to change their coverage positions in any respect. Instead, they have made the conscious decision to continue to deny coverage and defend their unreasonable decisions in bad faith.

93.     By reason of the foregoing, the Insured is entitled to recover punitive damages from RSUI and AIG for the sake of example and to punish and deter them in a sum to be determined by the trier of fact.

## COUNT III

### (Declaratory Relief Against all Defendants)

94.     The Insured incorporates by reference each and every allegation contained in Paragraphs 1 through 93 above as though fully set forth herein.

95.     An actual, present and justifiable controversy exists between the Insured and the Defendants with respect to the Insured's rights and the Defendants' duties under the insurance policies identified in this third cause of action as follows:

      a.  Defendants owe BloomTech a duty to defend.

      b.  The Defendants must defend fully for past and ongoing defense, as they failed to appoint counsel in 2021.

      c.  Defendants cannot disclaim the duty to defend for pre-tender defense costs when they breached the duty to defend in 2021.

      d.  Defendants cannot allocate defense costs between covered and uncovered claims.

      e.  Defendants cannot pay defense counsel fees at reduced panel counsel rates given their wrongful denial of coverage.

18

COMPLAINT
Case No.:     25-CV-0815

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

f. Defendants must indemnify BloomTech for its prior settlements and for any settlement or judgment of the ISA Demands.

g. The exclusions upon which Defendants rely are inapplicable or have been waived.

96. The Insured is informed and believes, and on the basis of such information and belief alleges, that Defendants dispute the aforesaid contentions and contend otherwise.

97. The Insured is now entitled to a declaration of their rights and the Defendants duties under the policies identified in this third cause of action: (a) to avoid a multiplicity of actions; (b) so that the parties will know their rights, duties and obligations under the policies identified in this second cause of action; and (c) so that the Insured will receive the benefits under said policies.  Specifically, the Insured is entitled to a declaration that their contentions, as set forth in Paragraph 95, are correct.

## PRAYER FOR RELIEF

WHEREFORE, the Insureds pray for judgment as follows:

1. Under the First Cause of Action, for compensatory damages in excess of the jurisdictional minimum of this Court in an amount according to proof;

2. Under the Second Cause of Action, for compensatory, consequential and punitive damages in excess of the jurisdictional minimum of this Court according to proof and for attorneys' fees and costs incurred in obtaining the benefits due under the policies;

3. Under the Third Cause of Action, for a declaration of parties' rights, duties and obligations under the subject policies, and specifically a declaration that the Insureds' contentions are correct;

4. For pre-judgment interest in accordance with law;

5. For expenses and costs incurred herein; and

6. For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT
Case No.:   25-CV-0815

Respectfully submitted,

Dated:  January 23, 2025

By: */s/Lilit Asadourian*

**BARNES & THORNBURG LLP**
Lilit Asadourian (SBN  208801)
*lasadourian@btlaw.com*
Alice Kyureghian (SBN 300972)
*akyureghian@btlaw.com*
2029 Century Park East, Suite 300
Los Angeles, CA 90067-3012
Telephone:  310-284-3880
Facsimile:   310-284-3894

Janice L. Chase (SBN 352143)
*janice.chase@btlaw.com*
655 W. Broadway Ste. 133
Telephone: 619-321-5000
Facsimile: 310-284-3894

*Counsel for Plaintiff*

**BARNES &**
**THORNBURG LLP**
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT**
**Case No.:**   25-CV-0815