# EXHIBIT **A**



**Corporate Office**
945 East Paces Ferry Rd.
Atlanta, GA  30326-1160

# PRIVATE COMPANY
# MANAGEMENT LIABILITY POLICY

**NOTICE:** THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE **CLAIMS** FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD** THAT ARE REPORTED TO THE **INSURER** DURING THE **POLICY PERIOD**, OR EXTENDED REPORTING PERIOD (IF APPLICABLE) AND REPORTED IN ACCORDANCE WITH THIS POLICY'S REPORTING PROVISIONS.  THE LIMIT OF LIABILITY AVAILABLE TO PAY **LOSS** SHALL BE REDUCED OR TOTALLY EXHAUSTED BY PAYMENT OF **DEFENSE EXPENSES**.

**PLEASE READ YOUR POLICY CAREFULLY**

## CLAIM NOTICE

**Mail notices to:**  **RSUI Group, Inc.**
**945 East Paces Ferry Rd.**
**Suite 1800**
**Atlanta, GA 30326-1160**

**Fax notices to:**  **(404) 231-3755**
**Attn: Claims Department**

**E-mail notices to:**  **reportclaims@rsui.com**

**RSUI's Panel Counsel Finder:**  **Panel Counsel Link**

*A member of Alleghany Insurance Holdings LLC*

## PRIVATE COMPANY COMMON POLICY DECLARATIONS



Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER | RENEWAL OF |
|---|---|---|
| N | PP688513 | NPP682895 |

●THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ IT CAREFULLY.●

THIS POLICY IS ISSUED BY:    RSUI Indemnity Company (hereinafter referred to as the Insurer)

**ITEM 1.**   INSURED ORGANIZATION'S NAME AND MAILING ADDRESS          PRODUCER'S NAME AND ADDRESS

LAMBDA INC.
250 MONTGOMERY STREET
16TH FLOOR
SAN FRANCISCO, CA 94104

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM 2. POLICY PERIOD:**

FROM    7/31/2020    TO    7/31/2021    12:01 AM Standard Time at the Insured's address as stated herein

**ITEM 3. COVERAGE SECTIONS APPLICABLE TO POLICY:**

|  | **Purchased** | **Shared Limit** | **Separate Limit** |
|---|---|---|---|
| A.  Directors and Officers Liability Insurance | ☒ Yes ☐ No | ☐ | ☒ |
| B.  Employment Practices Liability Insurance | ☒ Yes ☐ No | ☐ | ☒ |
|    1)  Third Party Liability Coverage | ☒ Yes ☐ No |  |  |
| C.  Fiduciary Liability Insurance | ☐ Yes ☒ No | ☐ | ☐ |

**ITEM 4. LIMIT OF LIABILITY:**

$  2,000,000          Aggregate Limit of Liability for All **Coverage Sections**

**ITEM 5. PREMIUM:**

$  50,450.00          Total Policy Premium for All Coverage Sections

**ITEM 6. POLICY FORM AND ENDORSEMENTS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:**
SEE SCHEDULE OF ENDORSEMENTS – RSG 240041 0118

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____    August 06, 2020    _Kym Hadgeck_
                                                    DATE             AUTHORIZED REPRESENTATIVE

# PRIVATE COMPANY DIRECTORS AND OFFICERS LIABILITY DECLARATIONS



Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER |
|---|---|
| N | PP688513 |

●THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ IT CAREFULLY.●

THIS POLICY IS ISSUED BY:    RSUI Indemnity Company (hereinafter referred to as the Insurer)

**ITEM 1.**    INSURED ORGANIZATION'S NAME

LAMBDA INC.

## ITEM 2. LIMIT OF LIABILITY:

A.  Directors and Officers Limit of Liability          $  1,000,000
B.  Additional Side-A Limit of Liability               $  500,000
C.  Investigative Costs Sublimit of Liability          $  250,000

## ITEM 3. RETENTION:

A. Directors and Officers Liability Retentions
   1)  Insuring Agreement A          $  0
   2)  Insuring Agreement B          $  100,000
   3)  Insuring Agreement C          $  100,000

## ITEM 4. PRIOR AND/OR PENDING LITIGATION DATE:

Directors and Officers Prior and/or Pending Litigation Date:          09/26/2018

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____     August 06, 2020          _Kym Hadzek_
                                             DATE          AUTHORIZED REPRESENTATIVE

# PRIVATE COMPANY EMPLOYMENT PRACTICES LIABILITY DECLARATIONS



Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER |
|---|---|
| N | PP688513 |

●THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ IT CAREFULLY.●

THIS POLICY IS ISSUED BY:   RSUI Indemnity Company (hereinafter referred to as the Insurer)

**ITEM 1.**  INSURED ORGANIZATION'S NAME

   LAMBDA INC.

**ITEM 2. LIMIT OF LIABILITY:**

    A.  Employment Practices Limit of Liability    $ 1,000,000

       (Including Third Party Liability, if purchased)

    B.  Workplace Violence Expenses Sublimit    $ 250,000

**ITEM 3. RETENTION:**

    A.  Employment Practices Liability Retentions

      1)  Employment Practices Liability    $ 150,000

      2)  Third Party Liability Coverage    $ 150,000

**ITEM 4. PRIOR AND/OR PENDING LITIGATION DATE:**

    Employment Practices Prior and/or Pending Litigation Date:    09/26/2019

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____     August 06, 2020      *Kym Hadfield*

                                            DATE                         AUTHORIZED REPRESENTATIVE

**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**
**SUPPLEMENTAL DECLARATIONS**

*RSUI*

POLICY NUMBER:    NPP688513

SCHEDULE OF FORMS AND ENDORSEMENTS

| TITLE | FORM NUMBER |
|-------|-------------|
| California Changes-Cancellation and Nonrenewal | RSG 203005 0118 |
| Disclosure Pursuance to Terrorism Risk Insurance Act | RSG 204123 0116 |
| Cap on Losses From Certified Acts of Terrorism | RSG 204198 0118 |
| **FORMS APPLICABLE TO MULTIPLE COVERAGE PARTS** | |
| Common Policy Terms and Conditions Coverage Section-Private Company | RSG 241001 0118 |
| Absolute Exclusion-Specific Entities and Individuals | RSG 206102 0118 |
| Amended Settlement Provision | RSG 204160 0118 |
| Exclusion-Amended Bodily Injury and Property Damage | RSG 206118 0119 |
| Exclusion-Bankruptcy-Insolvency | RSG 206104 0118 |
| Exclusion-Biometric Privacy Claims | RSG 206125 0120 |
| Exclusion-Regulatory | RSG 206111 0118 |
| Exclusion-Sexual Misconduct and Child Abuse | RSG 206076 0118 |
| Sublimit-Accreditation-Certification | RSG 204110 0118 |
| Sublimit-Credentialing-Peer Review | RSG 204112 0118 |
| Sublimit-Employed Lawyers Professional Liability | RSG 204182 0718 |
| **FORMS APPLICABLE TO DIRECTORS & OFFICERS LIABILITY** | |
| Directors and Officers Liability Coverage Section-Private Company | RSG 241007 0118 |
| Absolute Contractual Exclusion | RSG 244018 0420 |
| Exclusion-Broadcasting, Advertising and Publishing | RSG 206105 0118 |
| Exclusion-Major Shareholder | RSG 246011 0118 |
| **FORMS APPLICABLE TO EMPLOYMENT PRACTICES LIABILITY** | |
| Employment Practices Liability Coverage Section-Private Company | RSG 241008 0118 |

RSG 240041 0118

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

SECTION V. – CONDITIONS, F. Cancellation; Renewal Provision of the Common Policy Terms and Conditions Coverage Section is deleted and replaced by the following:

**F.  Cancellation; Renewal Provision**

The **Insured Organization** may cancel this policy at any time by written notice or by surrender of this policy to the **Insurer** at its address shown on the Declarations Page.

This policy may only be cancelled by or on behalf of the **Insurer** in the event the **Insured Organization** fails to pay any premium when due.  In the event of non-payment of premium by the **Insured Organization**, the **Insurer** may cancel this policy upon ten (10) days written notice.  The **Insurer** will mail notice to the **Insured Organization's** address as shown in Item 1. of the Declarations Page.  The mailing of such notice as aforesaid shall be sufficient proof of notice.

If the **Insured Organization** cancels this policy, the **Insurer** will retain the customary short rate proportion of the premium hereon.

The **Insurer** shall not be required to renew this policy upon its expiration.  The offer by the **Insurer** of renewal terms, conditions, Limit of Liability and/or premiums varying from those of the expiring policy shall not constitute a refusal to renew.

**Nonrenewal**

1.  Subject to provisions of paragraph 2. below, if the **Insurer** elects not to renew this policy, the **Insurer** will mail or deliver written notice stating the reason for nonrenewal to the **Insured Organization** shown in the Declarations Page and to the producer of record, at least sixty (60) days, but not more than one hundred twenty (120) days, before the expiration or anniversary date.

    The **Insurer** will mail or deliver said notice to the **Insured Organization**, and to the producer of record, at the mailing address shown in this policy.

2.  The **Insurer** is not required to send notice of nonrenewal in the following situations:

    a.  If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between the **Insurer** and a member of the **Insurer's** insurance group.

    b.  If the policy has been extended for ninety (90) days or less, provided that notice has been given in accordance with paragraph 1. above.

    c.  If the **Insured Organization** has obtained replacement coverage, or if the **Insured Organization** has agreed, in writing, within sixty (60) days of the termination of this policy, to obtain that coverage.

    d.  If the policy is for a period of no more than sixty (60) days and the **Insured Organization** is notified at the time of issuance that it will not be renewed.

    e.  If the **Insured Organization** requests a change in the terms or conditions or risks covered by this policy within sixty (60) days of the end of the **Policy Period**.

    f.  If the **Insurer** has made a written offer to the **Insured Organization**, in accordance with the timeframes shown in paragraph 1. above, to renew this policy under changed terms or conditions or at an increased premium rate, when the increase exceeds twenty five percent (25%.)

All other terms and conditions of this policy remain unchanged.

**Policy No.:**  NPP688513      **Effective:**  7/31/2020

RSG 203005 0118

RSUI INDEMNITY COMPANY

**THIS ENDORSEMENT IS ATTACHED TO AND MADE A PART OF THIS POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

| | |
|---|---|
| **Terrorism Premium** | **$0** |
| | |
| **Additional information, if any, concerning the terrorism premium:** | |
| **The portion of your premium for the policy term attributable to coverage for all acts of terrorism covered under this policy including terrorist acts certified under the Act is listed above.** | |

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations Page.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act, as amended, the **Insurer** is required to provide the **Insured** with a notice disclosing the portion of the **Insured's** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of the **Insured's** premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations Page.

As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses that exceeds the applicable **Insurer** retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap Insurer Participation in Payment of Terrorism Losses**

If aggregate **Insured** losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met our **Insurer** deductible under the Terrorism Risk Insurance Act, the **Insurer** will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case **Insured** losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**Policy No.:** NPP688513     **Effective:** 7/31/2020

RSG 204123 0116

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to the Common Policy Terms and Conditions Coverage Section:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met our insurer deductible under the Terrorism Risk Insurance Act, the **Insurer** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Exclusion.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513     **Effective:** 7/31/2020

RSG 204198 0118



# *www.RSUIextra.com*

## Online Human Resource Loss Prevention Services for Directors and Officers Liability Policyholders

### Key Features

- Best Practice Help Line for call-in assistance
- Checklist database for lowering risk
- Links to important federal and state government sites
- Online library with up-to-date articles on productivity, leadership and loss prevention
- Sample Human Resource policies and forms
- Online reporting function allows the Site Administrator to monitor usage
- Online training modules designed for managers and supervisors with the ability to adapt programs to meet their own needs.  Best Practice training modules include:
    - Preventing Sexual Harassment
    - Preventing Discrimination
    - Preventing Wrongful Termination
    - Promoting Ethical Behavior

### How to get started

1. Designate a person to serve as the Site Administrator for your organization.
2. Go to *www.RSUIextra.com*.
3. Click the *Register* link on the left-hand side of the home page.
4. Enter your RSUI policy number as the Passcode/Organization Code (i.e. NHP123456).
5. Complete the Registration Information and click *Submit.*
6. You are now registered as the Site Administrator.

### Who is a Site Administrator?

A Site Administrator is often a person who works with personnel or legal matters and is the person who will oversee the use of *www.RSUIextra.com*.  A Site Administrator will have the ability to recruit and add other users as well as make training decisions.

### Questions?

Please call The McCalmon Group at (888) 712-7667 or click *CONTACT US* at *www.RSUIextra.com* on the upper right hand side of the home page.  You will be directed to The McCalmon Group for assistance.

*This site is administered by The McCalmon Group.*

RSG 204154 0716

# COMMON POLICY TERMS AND CONDITIONS
## COVERAGE SECTION (PRIVATE)
## PLEASE READ YOUR POLICY CAREFULLY

Words and phrases that appear in **bold** text have special meaning.  Refer to SECTION III. - DEFINITIONS.

In consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, the **Insurer** agrees:

### SECTION I. – COMMON POLICY TERMS AND CONDITIONS

The Common Policy Terms and Conditions Section of this policy shall apply to all **Coverage Sections**.  Unless stated to the contrary in any **Coverage Section**, the terms and conditions of each **Coverage Section** of this policy shall apply only to that **Coverage Section** and shall not apply to any other **Coverage Section** of this policy.  If any provision in the Common Policy Terms and Conditions sections is inconsistent or in conflict with the terms and conditions in any **Coverage Section**, including any endorsements attached thereto, the terms and conditions of such **Coverage Section** or endorsement, shall supersede for the purposes of that **Coverage Section**.

### SECTION II. - COVERAGE EXTENSIONS

#### A.  Marital Estate

This policy shall cover **Loss** arising from any **Claim** made against the lawful spouse or any legally recognized domestic partner of an **Insured Person** for **Claims** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person** (where such status is derived by reason of statutory law or common law) where such **Insured Person** is entitled to coverage under this policy.  Such coverage shall extend to any **Claim** in which a recovery is sought from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner.

Provided, however, that this COVERAGE EXTENSION shall not extend coverage to any **Claim** for, arising from, based upon or attributable to any actual or alleged **Wrongful Act** of the spouse or domestic partner.

#### B.  Extended Reporting Period

If the **Insurer** shall refuse to renew this policy or the **Insured Organization** shall cancel or refuse to renew this policy, the **Insured Organization** shall have the right, upon payment of seventy five percent (75%) of the Full Annual Premium, to a period of three hundred and sixty five (365) days following the effective date of such cancellation or nonrenewal (herein referred to as the "Extended Reporting Period") in which to give written notice to the **Insurer** of any **Claim** first made against the **Insured** during said three hundred and sixty five (365) day period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.  As used herein, "Full Annual Premium" means the premium stated in Item 5. of the Common Policy Declarations Page and any additional premium(s) charged during the **Policy Period**.  The rights contained in this clause shall terminate unless written notice of such election together with the additional premium due is received by the **Insurer** at its address shown on the Declarations Page within thirty (30) days of the effective date of cancellation or nonrenewal.

The Extended Reporting Period is not cancelable and the additional premium charged shall be fully earned at the inception of the Extended Reporting Period.

The Limit of Liability available under the Extended Reporting Period is part of and not in addition to the Limit of Liability stated in Item 4. of the Declarations Page.

The rights contained in this clause shall not apply in the event of cancellation resulting from non-payment of premium.

#### C.  Estates and Legal Representatives

This policy shall cover **Loss** arising from any **Claim** made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased, or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, for the **Wrongful Act** of such **Insured Person**.

**SECTION III. - DEFINITIONS**

**A.** **Application** means the application attached to and forming a part of this policy, including any materials submitted or requested in connection with such application within 12 months prior to the inception date of this policy, all of which are deemed a part of this policy.

**B.** **Claim** shall have the meaning set forth in each applicable **Coverage Section** or any applicable endorsements attached to this policy.

**C.** **Coverage Section** means, individually or collectively, the purchased coverage sections listed in Item 3. of the Declarations, including all endorsements attached thereto.

**D.** **Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom. **Defense Expenses**, however, shall not include:

    **1.** Remuneration, overhead or benefit expenses associated with any **Insured Person**; or

    **2.** Any obligation to apply for or furnish any appellate or similar bond.

**E.** **Employment Practices Wrongful Act** shall have the meaning set forth in the Employment Practices Liability Coverage Section, whether or not purchased.

**F.** **Fiduciary Wrongful Act** shall have the meaning set forth in the Fiduciary Liability Coverage Section, whether or not purchased.

**G.** **Insured** shall have the meaning set forth in each applicable **Coverage Section** or any applicable endorsements attached to this policy.

**H.** **Insured Organization** means:

    **1.** The organization named in Item 1. of the Declarations Page and any **Subsidiary** existing prior to or at the inception date of this policy; or

    **2.** Subject to SECTION V. - CONDITIONS, G. Merger, Consolidation or Acquisition of this policy, **Insured Organization** shall include any **Subsidiary** created or acquired after the inception date of this policy; or

    **3.** In the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

**I.** **Insured Person** shall have the meaning set forth in each applicable **Coverage Section** or any applicable endorsements attached to this policy.

**J.** **Insurer** means the Company providing this insurance as shown on the Declarations Page.

**K.** **Loss** shall have the meaning set forth in each applicable **Coverage Section** or any applicable endorsements attached to this policy.

**L.** **Policy Period** means the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations Page or to any earlier policy cancellation or termination date.

**M.** **Subsidiary** means any entity of which the **Insured Organization**, either directly or indirectly, or through one or more of its **Subsidiaries**:

    **1.** Owns more than fifty percent (50%) of the voting stock and/or outstanding securities; or

    **2.** Has the right to elect or appoint more than fifty percent (50%) of the voting directors, management committee members or members of the Board of Managers.

    A **Subsidiary** ceases to be a **Subsidiary** when the **Insured Organization** no longer owns more than fifty percent (50%) of the voting stock and/or outstanding securities, or no longer has the right to elect or appoint more than fifty percent (50%) of the voting directors, management committee members or members of the Board of Managers, or the means by which the **Insured Organization** is legally enabled to exercise fifty percent (50%) ownership or control is formally extinguished.

**N.** **Wrongful Act** shall have the meaning set forth in each applicable **Coverage Section** or any applicable endorsements attached to this policy.

## SECTION IV. - EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

1. Alleging, arising out of, based upon or attributable to, directly or indirectly, the same or essentially the same facts underlying or alleged in any matter which, prior to the inception date of this policy, has been the subject of notice to any insurer of a **Claim**, or a potential or threatened **Claim**, or an occurrence or circumstance that might give rise to a **Claim** under any policy of which this insurance is a renewal or replacement or which it may succeed in time;

2. Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any nuclear reaction, nuclear radiation, or radioactive contamination, or any related act or incident;

3. Any **Telecommunications Claim**, as defined below.

   A **Telecommunications Claim** is any **Claim**:

   **a.** Arising from, based upon, attributable to, or in consequence of any proceeding against any **Insured** brought by the Federal Trade Commission or any other federal, state or local regulatory agency or other administrative body alleging the violation of any federal, state or local laws or regulation pertaining to unsolicited or non-consensual advertising, through faxes, telephone calls, texting or any other medium; and/or

   **b.** Arising from, based upon, attributable to, or in consequence of, any actual or alleged violation of:

      **(1)** The Fair Debt Collection Practices Act or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world;

      **(2)** The CAN-SPAM Act of 2003 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world;

      **(3)** The Telephone Consumer Protection Act (TCPA) of 1991 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world; or

      **(4)** Any other law, ordinance, regulation, statute or common law relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the EXCLUSIONS set forth in SECTION IV.

## SECTION V. - CONDITIONS

### A. Duty to Defend

It shall be the right and duty of the **Insurer** to defend any **Claim** against any **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of its choosing.  No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld.  Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy.  The **Insurer** shall have the right to appoint counsel, investigate and conduct negotiations and, with the consent of the **Insured**, to enter into the settlement of any **Claim** that the **Insurer** deems appropriate.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:

1. The amount for which the **Insurer** could have settled such **Claim** plus **Defense Expenses** incurred as of the date such settlement was proposed in writing by the **Insurer** ("Settlement Opportunity Amount"); plus

2. Seventy percent (70%) of covered **Loss** in excess of such Settlement Opportunity Amount subject to the policy's Limit of Liability.

In no event shall the **Insurer** be liable under this policy for more than the Limit of Liability shown in Item 4. of the Common Policy Declarations Page.

**B. Limit of Liability; Retention; Payment of Loss**

    **1. Aggregate Limit of Liability**

        Regardless of **Coverage Sections** purchased, as stated in Item 3. of the Common Policy Declarations Page, the amount shown in Item 4. of the Common Policy Declarations Page is the maximum aggregate limit that the **Insurer** will pay for all **Loss** under all **Coverage Sections** combined, arising out of any and all **Claims** first made against the **Insured** during the **Policy Period** and the Extended Reporting Period (if purchased) and reported in accordance with the terms and conditions of this policy.

        The **Insurer** will have no obligation to pay **Loss** or to defend or continue to defend any **Claim** after the aggregate Limit of Liability, stated in Item 4. of the Common Policy Declarations Page, has been exhausted by payment of **Loss**. **Defense Expenses** shall be part of and not in addition to the Limit of Liability and payment of **Defense Expenses** by the **Insurer** will reduce the Limit of Liability.

    **2. Separate Limit of Liability**

        Regardless of any Separate Limit(s) of Liability purchased, as stated in Item 3. of the Common Policy Declarations, the maximum limit of the **Insurer's** liability for all **Loss** for each applicable **Coverage Section** purchased shall not exceed the Separate Limit of Liability as stated in Item 2. of each applicable Declarations for each applicable **Coverage Section**. Where two or more Separate Limits of Liability are or could be applicable to one **Claim** or series of interrelated **Claims** deemed to be a single **Claim** pursuant to Section V.B.4. below, the larger of the applicable Separate Limits of Liability shall apply, but in no event shall more than one Separate Limit of Liability apply to any **Claim** or series of interrelated **Claims** and in no event shall the Insurer be obligated to pay **Loss** or to defend or continue to defend any **Claim** after the Insurer has paid the applicable Separate Limit of Liability or the Aggregate Limit of Liability per Section V.B.1. of these Common Policy Terms and Conditions.

    **3.** As a condition precedent to coverage under this policy, the **Insured** shall pay with respect to each **Claim** the applicable Retention amount, as identified in Item 3. of the Declarations Page for each applicable **Coverage Section** or as otherwise identified. The Retention amount shall be reduced solely by covered **Loss** and shall be applied to all **Loss**, including **Defense Expenses**, and the **Insurer** shall only be liable for the amount of **Loss** that is excess of the stated Retention amount.

    **4.** All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the Retention stated in Item 3. of the Declarations Page for each applicable **Coverage Section**, or other applicable Retention, and shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

    **5.** In the event that a **Claim** implicates more than one Retention amount, then the largest of the applicable Retention amounts shall be applied, but in no event shall more than one Retention amount be applied to a **Claim**.

    **6.** Any Retention amount applicable to a **Claim** against an **Insured Person** shall apply where indemnification by the **Insured Organization** is permitted or required, regardless of whether the **Insured Organization** has agreed, failed or refused to indemnify such **Insured Person**, provided it shall not apply when indemnification cannot be made by the **Insured Organization** by reason of the **Insured Organization's** financial insolvency.

    **7.** The **Insurer's** duty to defend the **Insured** and pay **Defense Expenses** ends upon exhaustion of the Limit of Liability, which includes paying or tendering the Limit of Liability into court.

    **8.** Except for payment of **Defense Expenses**, the **Insurer** shall pay for **Loss** only upon final disposition of any **Claim**.

**C. Notice of Claim or Circumstance**

    **1.** If, during the **Policy Period** or Extended Reporting Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** as soon as practicable after such **Claim** is first made, but in no event shall such notice be given later than sixty (60) days after either the **Policy Period** expires or any earlier cancellation date of this policy.

**2.** If, during the **Policy Period** or Extended Reporting Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any **Insured** for any **Claim** made against the **Insured** for any **Wrongful Act** occurring prior to the end of the **Policy Period**, and as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the **Insurer** written notice, of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**. The written notice shall include, at a minimum:

    **a.** The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and

    **b.** The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**.

Further, if any **Claim** first made after the **Policy Period** expires is nonetheless deemed to be made during the **Policy Period** pursuant to Section V.B.4., then it is a condition precedent to coverage for such **Claim** that the **Insured** report it to the **Insurer** as soon as practicable.

## D. Cooperation

In the event of a **Claim** or notice of circumstances under SECTION V. - CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insured** will provide the **Insurer** with all information, assistance and cooperation that the **Insurer** reasonably requests, and will take no action, without the **Insurer's** prior written consent, that might prejudice the **Insured's** or the **Insurer's** position, potential or actual rights, or defense under this policy.

## E. Allocation

If both **Loss** covered under this policy and loss not covered under this policy are jointly incurred either because a **Claim** includes both covered and non-covered matters or covered and non-covered causes of action or because a **Claim** is made against both an **Insured** and any other parties not insured by this policy, then the **Insured** and the **Insurer** shall use their best efforts to fairly and reasonably allocate payment under this policy between covered **Loss** and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.

If the **Insurer** and the **Insured** agree on an allocation of **Defense Expenses**, based on covered and non covered matters or persons, the **Insurer** shall advance **Defense Expenses** allocated to covered **Loss**. If there is no agreement on an allocation of **Defense Expenses**, the **Insurer** shall advance **Defense Expenses** that the **Insurer** believes to be covered under this policy until a different allocation is negotiated, arbitrated, or judicially determined.

Any negotiated, arbitrated or judicially determined allocation of **Defense Expenses** on account of a **Claim** shall be applied retroactively to all **Defense Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any advancement or allocation of **Defense Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other loss on account of such **Claim**.

## F. Cancellation; Renewal Provision

The **Insured Organization** may cancel this policy at any time by written notice or by surrender of this policy to the **Insurer** at its address shown on the Declarations Page.

This policy may only be cancelled by or on behalf of the **Insurer** in the event the **Insured Organization** fails to pay any premium when due. In the event of non-payment of premium by the **Insured Organization**, the **Insurer** may cancel this policy upon ten (10) days written notice. The **Insurer** will mail notice to the **Insured Organization's** address as shown in Item 1. of the Declarations Page. The mailing of such notice as aforesaid shall be sufficient proof of notice.

If the **Insured Organization** cancels this policy, the **Insurer** will retain the customary short rate proportion of the premium hereon.

The **Insurer** shall not be required to renew this policy upon its expiration. The offer by the **Insurer** of renewal terms, conditions, Limit of Liability and/or premiums varying from those of the expiring policy shall not constitute a refusal to renew.

If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver to the **Insured Organization** written notice of non-renewal, stating the reasons for non-renewal, at least sixty (60) days prior to the expiration date of this policy.

Any notice of non-renewal will be mailed or delivered to the **Insured Organization's** last mailing address known to the **Insurer**. If notice is mailed, proof of mailing will be sufficient proof of notice.

**G. Merger, Consolidation or Acquisition**

**1.** If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets do not exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place on or after the effective date of such creation or acquisition.

**2.** If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place within the first ninety (90) days after the date of such creation or acquisition. After this ninety (90) day period, the created or acquired **Subsidiary** shall no longer be deemed an **Insured Organization,** unless:

**a.** Written notice of the **Subsidiary's** creation or acquisition has been provided to the **Insurer** by the **Insured Organization**, as soon as practicable, and in no event later than ninety (90) days after the date of the creation or acquisition;

**b.** The **Insured Organization** has provided the **Insurer** with any additional information the **Insurer** may request;

**c.** The **Insured Organization** has agreed to the terms, conditions, exclusions and additional premium charge as may be required by the **Insurer**; and

**d.** The **Insurer**, at its sole discretion, has agreed in writing to extend the coverage of this policy to the created or acquired **Subsidiary**.

**3.** If during the **Policy Period**:

**a.** The **Insured Organization** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

**b.** Any person or entity or group of persons or entities acting in concert shall acquire an amount of more than fifty percent (50%) of the voting power for the election of directors of the **Insured Organization**;

(either of the above events in 3. a. or b. are hereunder referred to as the "Transaction"),

then this policy shall continue in full force and effect for any **Wrongful Act** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the Transaction. This policy may not be cancelled after the effective time of the Transaction and the premium for this policy shall be deemed fully earned as of such time.

The **Insured Organization** shall give the **Insurer** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

**H. Representations**

The **Insured** represents that the information, particulars, documents, representations and statements contained in the **Application** are complete, true and accurate; are deemed incorporated into and constituting part of this policy; are material to the acceptance of the risk assumed by the **Insurer** under this policy. This policy is issued in reliance upon the truth of such representations. No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**. If any of the information, particulars, documents, representations and statements contained in the **Application** are untrue, this policy will be void with respect to any **Insured** who knew of such untruth.

**I. No Action Against Insurer**

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there has been full compliance with all of the terms and conditions of this policy and until the amount of any **Insured's** obligation to pay **Loss** has been finally determined either by judgment against such **Insured** after adjudicatory proceedings, or by written agreement of the **Insured**, the claimant and the **Insurer**.

No **Insured** has any right under this policy to join the **Insurer** as a party to any **Claim** against an **Insured** to determine the liability of such **Insured**, nor shall the **Insurer** be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**.

**J.  Subrogation**

In the event the **Insurer** makes any payment under this Policy, the **Insurer** shall be subrogated to all of the rights of recovery of the **Insured**, who shall execute all papers and take all necessary actions to secure such rights, including the execution of any documents necessary to enable the **Insurer** to effectively bring suit in the name of an **Insured**.

**K.  Authorization and Notices**

The **Insured Persons** agree that the **Insured Organization** shown in Item 1. of the Declarations Page acts on their behalf with respect to giving and receiving all notices and return of premium from the **Insurer**.

**L.  Changes**

Notice to any agent or knowledge possessed by any agent or representations by persons acting on behalf of the **Insurer** do not effect a waiver or change in any part of this policy or estop the **Insurer** from asserting any right under the terms, conditions and limitations of this policy.  The terms, conditions and limitations of this policy can only be waived or changed by written endorsement.

**M.  Assignment**

Assignment of interest under this policy does not bind the **Insurer** without its prior written consent.

**N.  Acceptance**

The **Insureds** agree that this policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the **Insurer** relating to this insurance policy.

**O.  Headings**

The description in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**P.  Governing Law Clause**

This policy shall, to the extent permitted by applicable law, be construed in accordance with the laws of the state or jurisdiction of incorporation or organization of the **Insured Organization** shown in Item 1. of the Declarations Page or, in the case of matters pertaining to a **Subsidiary**, the laws of the state or jurisdiction of incorporation or organization thereof.

**Q.  Territory**

This policy shall apply to **Claims** made against any **Insured** anywhere in the world.

**R.  Other Insurance**

Unless specifically stated otherwise, the insurance provided under this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written as specific excess insurance over the Aggregate Limit of Liability or Shared Limit of Liability provided by this policy.  Any coverage otherwise available under any **Coverage Section** shall be specifically excess over any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

**In Witness Whereof**, the **Insurer** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the **Insurer**.

Secretary                                                         President

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ABSOLUTE EXCLUSION –
# SPECIFIC ENTITIES AND INDIVIDUALS

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to the Common Policy Terms and Conditions Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** made against any **Insured** which is brought by, on behalf of, or against the following entities or individuals:

Sabrina Baez

Ben Nelson


including, but not limited to any **Claim** brought by any director, officer, heir, trustee or partner of the entity, or by any security holder thereof, whether such **Claim** is brought directly or derivatively.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513     **Effective:** 7/31/2020

RSG 206102 0118

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AMENDED SETTLEMENT PROVISION

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

SECTION V. – CONDITIONS, A. Duty to Defend of the Common Policy Terms and Conditions Coverage Section is deleted and replaced by the following:

**A.   Duty to Defend**

It shall be the right and the duty of the **Insurer** to defend any **Claim** against any **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of its choosing.  No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld.  Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy.  The **Insurer** shall have the right to appoint counsel, investigate and conduct negotiations and, with the consent of the **Insured**, to enter into a settlement of any **Claim** that the **Insurer** deems appropriate.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:

1.   The amount for which the **Insurer** could have settled such **Claim** plus **Defense Expenses** incurred as of the date such settlement was proposed in writing by the **Insurer** ("Settlement Opportunity Amount"); plus

2.   Eighty percent (80%) of covered **Loss** in excess of such Settlement Opportunity Amount subject to the policy's Limit of Liability.

In no event shall the **Insurer** be liable under this policy for more than the Limit of Liability shown in Item 4. of the Common Policy Declarations Page.

All other terms and conditions of this policy remain unchanged.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – AMENDED BODILY INJURY AND PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY
PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

A.  SECTION IV. – EXCLUSIONS, 6. of the Directors and Officers Liability Coverage Section is deleted and replaced with the following:

   6.  Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged;

B.  The first paragraph of SECTION IV. – EXCLUSIONS, 2. of the Employment Practices Liability Coverage Section is deleted and replaced with the following:

   2.  Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

      a.  Bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; provided, this EXCLUSION 2.a. will not apply to allegations of mental anguish or emotional distress made solely in connection with an **Employment Practices Claim** or a **Claim** for **Third Party Discrimination** and/or **Third Party Harassment**; or

      b.  Damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged;

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513    **Effective:** 7/31/2020

RSG 206118 0119

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – BANKRUPTCY / INSOLVENCY

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION IV. – EXCLUSIONS, of the Common Policy Terms and Conditions Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** under this policy in connection with any **Claim** made against any **Insured**:

1.  Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any **Wrongful Act** that is alleged to have caused, directly or indirectly, in whole or in part:

    a.  The bankruptcy or insolvency of the **Insured Organization**;

    b.  The **Insured Organization's** filing of a petition, or a petition being filed against the **Insured Organization** pursuant to the federal Bankruptcy Code or any similar state law;

    c.  The **Insured Organization** assigning its assets for the benefit of its creditors; or

    d.  By any other means seeking protection under the common or statutory law as a result of insolvency or financial impairment.

2.  Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, the **Insured Organization** having sustained a financial loss due to a **Wrongful Act** by or on behalf of any **Insured Person** that actually or allegedly occurred before the date that the **Insured Organization** or other party sought protection of the **Insured Organizations** assets by any means including but not limited to those referenced in sections 1. a. through 1. d. of this endorsement.

3.  Brought or maintained by or on behalf of any creditor or debt-holder of the **Insured Organization**, or any **Claim** arising out of any actual or alleged **Wrongful Act**, where such **Wrongful Act** actually or allegedly results in the **Insured Organization's** failure, refusal or inability to pay debts or amounts due and owing, including but not limited to **Claims** alleging misrepresentation in connection with any extension of credit or in connection with the purchase or sale of a debt instrument, or **Claims** alleging any **Wrongful Acts** where such **Wrongful Acts** actually or allegedly result in the deterioration in the value of any debt instrument or security as a result of, wholly or in part the bankruptcy or insolvency of the **Insured Organization**.

The specific limitations on coverage contained in this endorsement should not under any circumstances be interpreted to suggest the existence of coverage under terms and conditions elsewhere in this policy or in contexts other than those referenced in this endorsement.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513      **Effective:** 7/31/2020

RSG 206104 0118

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## EXCLUSION – BIOMETRIC PRIVACY CLAIMS

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION IV. – EXCLUSIONS, of the Directors and Officers Liability Coverage Section and Employment Practices Liability Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** under this policy in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any actual or alleged violation of **Biometric Privacy Information**.

For the purpose of this endorsement, **Biometric Privacy Information** is defined as the Biometric Information Privacy Act ("BIPA"), the California Consumer Privacy Act ("CCPA"), or any federal, state, municipal or local statutory biometric privacy law or any such similar law or statute anywhere in the world that governs or relates to the collection, use, safeguarding, handling, storage, retention or destruction of biometric identifiers, biometric data or biometric information of any kind, including but not limited to retina or iris scans, fingerprints, voiceprints or scans of hand or face geometry.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513    **Effective:** 7/31/2020

RSG 206125 0120

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION - REGULATORY

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION IV. – EXCLUSIONS, of the Directors and Officers Liability Coverage Section and the Employment Practices Liability Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** made against any **Insured** which is brought by or on behalf of any of the following:

a.   The United States;

b.   Any federal, state, city or local governmental or quasi-governmental official, agency, municipality or entity; or

c.   Any regulatory, self-regulatory, or administrative official, agency or entity, including, without limitation, any state or federal securities, banking or insurance commission official or agency.

This EXCLUSION applies to, but is not limited to, **Loss** on account of qui tam action(s) and relator lawsuit(s) and any other means by which a **Claim** may be asserted by or on behalf of the entities, agencies, commissions or other organizations referenced in a., b. and c., above; however, this EXCLUSION shall not apply to **Loss** arising from any **Claim** brought by any shareholder of the **Insured Organization** in his/her/its capacity as such, whether in his/her/its own right or on behalf of the **Insured Organization**, provided that such **Claim** is brought and maintained without the assistance, participation or solicitation of any **Insured Person**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513      **Effective:** 7/31/2020

RSG 206111 0118

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION - SEXUAL MISCONDUCT AND CHILD ABUSE

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY
PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION IV. – EXCLUSIONS, of the Directors and Officers Liability Coverage Section and the Employment Practices Liability Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to or in any way involving, directly or indirectly, any **Sexual Misconduct**, child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

**Sexual Misconduct** means any licentious, immoral or sexual behavior, sexual abuse, sexual assault or molestation or any sexual act against any individual.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513      **Effective:** 7/31/2020

RSG 206076 0118

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SUBLIMIT - ACCREDITATION / CERTIFICATION

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION II. – COVERAGE EXTENSIONS, of the Directors and Officers Liability Coverage Section and the Employment Practices Liability Coverage Section:

The amount set forth in Item 4. of the Common Policy Declarations Page shall be the maximum aggregate Limit of Liability for all **Loss** under this policy.  Subject to the foregoing, the amount of $ 50,000 shall be the maximum aggregate Limit of Liability of the **Insurer** for **Loss** under this policy in connection with any **Claim** alleging, arising out of, based upon, or attributable to any accreditation and/or certification programs of the **Insured Organization** or the administration of these programs by any **Insured Person**.  This sublimit shall be one sublimit only, regardless of the number of Coverage Sections purchased by any or all **Insureds**, and shall be part of and not in addition to the amount set forth in Item 4. of the Common Policy Declarations Page.

A Retention in the amount of $ 25,000 shall apply to any **Loss** arising from any accreditation and/or certification programs.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** arising from an accreditation and/or certification program which is in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered as "Side A", or non-indemnifiable or non-indemnified **Loss** in keeping with Policy terms and conditions, the Retention normally applicable in such situations shall apply to such **Claim**, and the Retention stated here shall not apply.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513    **Effective:** 7/31/2020

RSG 204110 0118

RSUI **INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## SUBLIMIT – CREDENTIALING / PEER REVIEW

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION II. – COVERAGE EXTENSIONS, of the Directors and Officers Liability Coverage Section and the Employment Practices Liability Coverage Section:

The amount set forth in Item 4. of the Common Policy Declarations Page shall be the maximum aggregate Limit of Liability for all **Loss** under this policy.  Subject to the foregoing, the amount of $50,000 shall be the maximum aggregate Limit of Liability of the **Insurer** for **Loss** under this policy in connection with any **Claim** alleging, arising out of, based upon, or attributable to any credentialing and/or peer review activities of any **Insured**.  This sublimit shall be one sublimit only, regardless of the number of Coverage Sections purchased by any or all **Insureds**, and shall be part of and not in addition to the amount set forth in Item 4. of the Common Policy Declarations Page

A Retention in the amount of $25,000 shall apply to any **Loss** arising from any credentialing and/or peer review activities.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** arising from any credentialing and/or peer review activities which is in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered as "Side A", or non-indemnifiable or non-indemnified **Loss** in keeping with Policy terms and conditions, the Retention normally applicable in such situations shall apply to such **Claim**, and the Retention stated here shall not apply.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513    **Effective:** 7/31/2020

RSG 204112 0118

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SUBLIMIT – EMPLOYED LAWYERS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION II. – COVERAGE EXTENSIONS, of the Directors and Officers Liability Coverage Section and Employment Practices Liability Coverage Section:

The term **Insured Person** is amended to include any **Employed Lawyer** (as defined below) of the **Insured Organization**, but only for any **Claim** alleging a **Wrongful Act** in such **Employed Lawyers'** capacity as such, subject to the terms, conditions and exclusions of the policy and this endorsement.

Solely for the purposes of this endorsement, the term **Wrongful Act** means any act, error or omission of an **Employed Lawyer** in the rendering or failure to render professional legal services for the **Insured Organization**, but solely in his or her capacity as such.  Provided, however, that the term **Wrongful Act** shall not mean any act, error or omission in connection with any activities by such **Employed Lawyer**:  (1) which are not related to such **Employed Lawyer's** employment with the **Insured Organization**; (2) which are not rendered on the behalf of the **Insured Organization** at the **Insured Organization's** written request; or (3) which are performed by the **Employed Lawyer** for others for a fee.

It is further understood and agreed that solely with respect to the coverage afforded by this endorsement, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Employed Lawyer**:

(a) alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring at a time when the **Employed Lawyer** was not employed as a lawyer by the **Insured Organization**;

(b) alleging, arising out of, based upon or attributable to as of December 3, 2019, any pending or prior litigation, or administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging any **Wrongful Act** which is the same or related wrongful act to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(c) alleging, arising out of, based upon or attributable to any **Wrongful Act**, if as of December 3, 2019, an **Employed Lawyer** knew or could have reasonably foreseen that such **Wrongful Act** could give rise to a **Claim**;

(d) alleging, arising out of, based upon or attributable to any activities by an **Employed Lawyer** as an officer or director of any entity, other than the **Insured Organization**.

With regard to all **Loss** arising from coverage afforded by this endorsement, the limit of the **Insurer's** liability shall be $1,000,000 (hereinafter the "sublimit of liability").  This sublimit shall be one sublimit only, regardless of the number of Coverage Sections purchased by any or all **Insureds**, and shall be part of and not in addition to the amount set forth in Item 4. of the Common Policy Declarations Page.

For the purpose of the applicability of the coverage provided by this endorsement, the **Insured Organization** will be conclusively deemed to have indemnified the **Employed Lawyer** to the extent that the **Insured Organization** is permitted or required to indemnify them pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Insured Organization**.   The **Insured Organization** hereby agrees to indemnify the **Employed Lawyer** to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

Coverage as is afforded under this endorsement shall apply to a **Wrongful Act** only if one or more **Insured** (other than an **Employed Lawyer**) are, and remain co-defendants in the action along with an **Employed Lawyer**.

It is further understood and agreed that the coverage provided by this endorsement is specifically excess over any other valid or collectible Lawyers Professional Insurance, Legal Malpractice or Errors and Omissions Insurance. It shall be primary insurance only in the event of exhaustion of such other insurance that is paid for covered loss or if no such other valid insurance exist.

**Policy No.:** NPP688513        **Effective:** 7/31/2020

The term **Employed Lawyer** means any **Employee** of the **Insured Organization**, in their capacity as such, who is admitted to practice law and who is or was employed as a lawyer full-time and salaried by the **Insured Organization**.

All other terms and conditions of this policy remain unchanged.

# DIRECTORS AND OFFICERS LIABILITY
# COVERAGE SECTION (PRIVATE)
# PLEASE READ YOUR POLICY CAREFULLY

Words and phrases that appear in **bold** text have special meaning.  Refer to SECTION III. – DEFINITIONS in this Coverage Section or the Common Policy Terms and Conditions.

If purchased, as indicated in Item 3. of the Common Policy Declarations Page, and in consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations provided hereinafter or in the Common Policy Terms and Conditions, the **Insurer** agrees:

**SECTION I. - INSURING AGREEMENTS**

**Directors and Officers Liability**

**A.** With the **Insured Person**, that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of such **Insured Person** all **Loss** such **Insured Person** is legally obligated to pay, except and to the extent that the **Insured Organization** is required or permitted to indemnify such **Insured Person** for such **Loss.**

**B.** With the **Insured Organization,** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** is required or permitted to indemnify the **Insured Person**.

**C.** With the **Insured Organization,** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

Notwithstanding anything contained in this policy to the contrary, the coverage provided under SECTION I. INSURING AGREEMENTS A. and B. shall be non-rescindable by the **Insurer**.

**SECTION II. – COVERAGE EXTENSIONS**

**A. Outside Board Extension**

This policy shall cover **Loss** arising from an **Insured Person** having served, at the direction of and with the consent of the **Insured Organization**, as Director, Officer, or Trustee for any eleemosynary corporation or other not for profit organization where such **Insured Person** is entitled to indemnification by the **Insured Organization**.

This COVERAGE EXTENSION shall be excess of any indemnification and/or insurance that may be permitted or provided by such eleemosynary corporation or organization, regardless of payment made by or on behalf of such eleemosynary corporation or organization, including but not limited to any other Director and Officer Liability Insurance or similar insurance provided for, to, or by any such eleemosynary corporation or organization.

**B. Additional Side-A Limit of Liability**

If a limit is shown in Item 2.B of the Directors and Officers Liability Declarations, then there shall be an addition to the maximum aggregate Limit of Liability available under this Directors and Officers Coverage Section.  This amount shall be in addition to the Limit of Liability as set forth in Item 2.A. of the Directors and Officers Liability Declarations Page and shall be available solely for **Loss** resulting from a **Claim** against any **Insured Persons** covered under SECTION I. INSURING AGREEMENT A. of this coverage section, and shall be subject to the following additional conditions:

(1) Any **Loss** resulting from a **Claim** against any **Insured Persons** covered under SECTION I. INSURING AGREEMENT A. of this Directors and Officers Coverage Section shall first be paid under the Limit of Liability as set forth in Item 2.A. of the Directors and Officers Liability Declarations Page, and such Limit of Liability must be completely exhausted by payment of **Loss** under SECTION I. INSURING

AGREEMENTS A., B., and/or C. of this Directors and Officers Coverage Section before **Loss** shall be paid under the additional Limit of Liability dedicated for **Insured Persons:** and

(2) The additional Limit of Liability dedicated for **Insured Persons** shall be excess of any insurance available that is specifically excess of this policy and such excess insurance must be completely exhausted by payment of **Loss** thereunder before the **Insurer** shall have any obligation to make any payment on account of the additional Limit of Liability dedicated for **Insured Persons**.

**C. Investigation Costs Sublimit of Liability**

The **Insurer's** maximum aggregate Limit of Liability for all **Loss** under this policy for all **Investigative Costs** shall be the Investigative Costs Sublimit of Liability as indicated in Item 2.C. of the Directors and Officers Liability Declarations Page.  This sublimit shall be part of and not in addition to the amount set forth in Item 2.A. of the Directors and Officers Liability Declarations Page.

This policy shall cover **Loss** arising from all **Investigative Costs** which the **Insured Organization** shall become legally obligated to pay as a result of a **Shareholder Derivative Demand** first made during the **Policy Period** or Discovery Period, if applicable, against the **Insured Organization** for a **Wrongful Act** of an **Insured Person**.

**SECTION III. - DEFINITIONS**

**A. Claim**, either in the singular or the plural, means:

 **1.** A written demand for monetary or non-monetary relief;

 **2.** A civil, criminal, administrative, regulatory or arbitration proceeding, or arbitration demand for monetary or non-monetary relief which is commenced by:

   **a.** Receipt or service of a complaint or similar pleading;

   **b.** Return of an indictment or filing of information; or

   **c.** Receipt of a notice of charges;

 **3.** A written request to an **Insured** to toll or waive a statute of limitations regarding a potential **Claim**, commenced by the receipt of such request by the **Insured**;

 **4.** A civil, criminal, administrative or regulatory investigation of an **Insured Person** by the Securities Exchange Commission ("SEC") or similar state or foreign government authority, after the **Insured Person** is identified in a written "Wells" or other notice from the SEC or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Insured Person**;

**B. Employee** means any past, present or future employee of the **Insured Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee of the **Insured Organization**.  An individual who is leased or contracted to the **Insured Organization** shall also be an **Employee**, but only if the **Insured Organization** provides indemnification to such leased or contracted individual in the same manner as is provided to the **Insured Organization's** employees.

**C. Insured** means any **Insured Organization** and/or any **Insured Person**.

**D. Insured Person** means:

 **1.** Any past, present or future director, officer, or **Employee**, management committee members or members of the Board of Managers of the **Insured Organization**; or

 **2.** In the event the **Insured Organization** or a **Subsidiary** thereof operates outside the United States, then the term **Insured Person** also means those titles, positions or capacities for such foreign **Insured Organization** or **Subsidiary** that are equivalent to the positions of directors or officers in the United States.

**E. Investigative Costs** means reasonable costs, charges, fees (including attorneys' and experts' fees) and expenses incurred by the **Insured Organization**, its board of directors or any committee thereof in connection with the investigation or evaluation of any **Shareholder Derivative Demand**; provided, however, that **Investigative Costs** shall not include salaries, wages, benefits, expenses or fees of any director, officer or **Employee** of the **Insured Organization**.

**F. Loss** means damages, settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**.  **Loss** (other than **Defense Expenses**) shall not include:

1.  Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

2.  Amounts owed under any contract, partnership, stock or other ownership agreement, or any other type of contract;

3.  Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

4.  The cost of creating or reinstating employment;

5.  Any amounts owed to any **Employee** as wages, compensation, severance or benefits previously incurred or vested without regard to any **Claim**;

6.  Civil or criminal fines or penalties;

7.  Taxes, whether owed to or by any **Insured**;

8.  Amounts, including **Defense Expenses**, arising out of, based upon or attributable to actual or alleged liability or costs incurred by any **Insured** to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person;

9.  Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable.  For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.

G.  **Shareholder Derivative Demand** means any written demand by one or more shareholders of the **Insured Organization** made upon the board of directors of the **Insured Organization** to bring a proceeding in a court of law against any **Insured Person** for a **Wrongful Act**.

H.  **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by:

1.  An **Insured Person** acting in his or her capacity as such and on behalf of the **Insured Organization** or any matter claimed against them solely by reason of their status as an **Insured Person**; or

2.  The **Insured Organization**.

## SECTION IV. - EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

1.  Based upon, arising out of or attributable to any remuneration received by an **Insured**, or the granting of any remuneration to any **Insured**, without the previous approval of the stockholders or the Board of Directors, which remuneration is found to have been illegal; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** received remuneration to which such **Insured** was not legally entitled;

2.  Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any criminal or deliberate fraudulent act; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** committed such criminal or fraudulent act;

3.  Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining of any profit or advantage to which an **Insured** was not legally entitled; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** gained profit or advantage to which such **Insured** was not legally entitled;

4.  Alleging, arising out of, based upon or attributable to, in whole or part, any litigation involving any **Insured** that was commenced or initiated prior to, or was pending on or before the date referenced in Item 4. of the Directors and Officers Liability Declarations Page, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation;

5.  Alleging, arising out of, based upon or attributable to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law;

6. For actual or alleged bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged;

7. Alleging, arising out of, based upon or attributable to, in whole or in part, the performance or rendering of or failure to perform professional services, where such services are undertaken for others for a fee;

8. For violation of any of the responsibilities, obligations or duties imposed by: The Fair Labor Standards Act (except the Equal Pay Act) or any state or local statutory or common law, regulation or ordinance that governs payment or administration of wages, hours worked, or employee entitlements; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Worker Adjustment and Retraining Notification Act; the Consolidated Omnibus Budget Reconciliation Act; the Occupational Safety and Health Act; any rules or regulations of any of the foregoing promulgated thereunder and amendments thereto; or any similar provisions of any federal, state or local statutory or common law that govern the same subject matter governed by the laws referenced in this section even if particular laws have some additional or different provisions; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

9. Brought by or on behalf of any **Insured**, or which is brought by any security holder of the **Insured Organization**, whether directly or derivatively, unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured**.  Provided, however, this EXCLUSION shall not apply to:

   a. Any **Claim** brought by an **Insured Person**, where such **Claim** is in the form of a cross-claim or a third-party claim for contribution or indemnity, which is part of and results directly from a **Claim** that is not otherwise excluded by the terms of this policy;

   b. Any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Insured Organization**, in or after any bankruptcy proceeding by or against an **Insured Organization**;

   c. Any **Claim** brought by any past director, officer, trustee, manager or equivalent executives of the **Insured Organization** who have not served as a director, officer, trustee, manager or equivalent executive for at least three (3) years prior to the date such **Claim** is first made, but only if the **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation or intervention of the **Insured Organization** or any **Insured Person** not described in this paragraph 9.c;

   d. Any **Claim** brought by an **Employee** of the **Insured Organization** who is not or was not a director or officer of the **Insured Organization** and where such **Claim** is brought by such **Employee** only in their capacity as a stockholder and independently of assistance from **Insureds**, except those expressly as noted in section 9.c., above; or

   e. Any instigation of or involvement in any **Claim**, or solicitation, assistance, active participation or intervention by any **Insured** whistleblower under Section 806 of the Sarbanes-Oxley Act of 2002 or any rule or regulation promulgated thereunder, or under any similar whistleblower statute, rule or regulation under any other federal or state law.

   Provided further, however, that in the event that an **Insured Person** brings a cross-claim or third-party claim, as described in 9.a. above, against another **Insured Person**, then solely with respect to the **Loss** derived from a cross-claim or third-party claim, the **Insurer** shall be liable solely for **Defense Expenses**;

10. For the actual, alleged or threatened discharge, dispersal, release or escape of pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including but not limited to **Claims** alleging damage to the **Insured Organization**;

    Pollutant includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, whether live or inanimate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

11. Alleging, arising out of, based upon or attributable to any initial public offering of securities by the **Insured Organization** or alleging the purchase or sale of such securities subsequent to such offering;

12. With respect to INSURING AGREEMENT C. of this policy, only:

    a. For actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, secret or any other intellectual property rights;

    **b.**  For actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships; or

    **c.**  Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement.

**13.** Alleging, arising out of, based upon or attributable to, in whole or in part, any **Employment Practices Wrongful Act**.

**14.** Alleging, arising out of, based upon or attributable to, in whole or in part, any **Fiduciary Wrongful Act**.

The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the EXCLUSIONS set forth in SECTION IV.

## SECTION V. - CONDITIONS

### A. Bankruptcy and Priority of Payments

The bankruptcy or insolvency of the **Insured Organization** or any **Subsidiary** shall not relieve the **Insurer** of any of its obligations hereunder. The coverage provided by this policy, however, is intended primarily to protect and benefit the **Insured Persons**.

With respect to the payment of the policy proceeds, it is agreed that covered **Loss** due under this policy shall be paid by the **Insurer** in the following order of priority:

    **1.**  First pay such **Loss** for which coverage is provided under INSURING AGREEMENT A. of this policy;

    **2.**  With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT B. of this policy; and

    **3.**  With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT C. of this policy.

The **Insured Organization** or its representatives and the **Insurer** shall use their best efforts to agree upon the priority of payment of all **Loss** under this policy. If no agreement is reached regarding the priority of payments, then the **Insurer** and **Insured Organization** will submit the issue of such priority, and only that issue, to binding arbitration.

**In Witness Whereof**, the **Insurer** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the **Insurer**.

Secretary                             President

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ABSOLUTE CONTRACTUAL EXCLUSION

This endorsement modifies insurance provided under the following:

**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

A.  Section IV. EXCLUSIONS, 12.c. of the Directors and Officers Liability Coverage Section is deleted in its entirety.

B.  The following is added to Section IV. EXCLUSIONS of the Directors and Officers Liability Coverage Section:

Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement.

All other terms and conditions of this policy remain unchanged.

**Policy No.:**  NPP688513        **Effective:**  7/31/2020

RSG 244018 0420

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – BROADCASTING,
# ADVERTISING AND PUBLISHING LIABILITY

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION IV. – EXCLUSIONS, of the Directors and Officers Liability Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to, directly or indirectly or in any way involving:

a.  Publishing or re-publishing;

b.  Advertising;

c.  Broadcasting or re-broadcasting;

d.  Telecasting or re-telecasting;

e.  Any actual or alleged piracy;

f.  Any actual or alleged idea misappropriation under implied contract;

g.  Any actual or alleged libel, slander, or other defamation or invasion of privacy in connection with any advertisement, publicity, article, broadcast or telecast;

h.  Any actual or alleged plagiarism, infringement of patent, copyright, trademark, title or slogan; or

i.  Any actual or alleged false arrest, false imprisonment, wrongful entry or eviction or other wrongful invasion of the right to private occupancy, wrongful detention, malicious prosecution, humiliation, defamation of character or invasion of rights of privacy.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513     **Effective:** 7/31/2020

RSG 206105 0118

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – MAJOR SHAREHOLDER

This endorsement modifies insurance provided under the following:

**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION IV. – EXCLUSIONS, of the Directors and Officers Liability Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** brought by or on behalf of individuals or entities that own, beneficially or directly, <u>five</u> percent (<u>5</u>%) or more of the outstanding stock of the **Insured Organization**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NPP688513    **Effective:** 7/31/2020

RSG 246011 0118

## EMPLOYMENT PRACTICES LIABILITY
## COVERAGE SECTION (PRIVATE)
## PLEASE READ YOUR POLICY CAREFULLY

5 eWd Psr npWPdgd hpPhPnngPWts **bold** hgi hpPxg dngvtPcl gPstsamRgogWre S. ECT O TTmN – . DTOTCT OS ts hptd Eexg\Pag Sgvhtes eWlpg Eel l es 8edvF CgW d Psr Eesr ttesdm

To ny\PpPdgr u Pd tsr tvPhgr ts Tgl , meo hpg Eel l es 8edvF – gvoPWPhtesd 8 Pagu hPsr ts vesdtr gWrhtes eo hpg nPFl gsheon\Pgl tyl Psr ts WgdPsvg ynes PccdfPhgl gshd l Prg he hpg **Insurer** ts hpg **Application** uPsr dy3tgvhhe hpg hgW duvesr tthesdur gdstthesdugi vgydtesd Psr dl tthPhtesd nWxtr gr pg\Wgts PdngWeWts hpg Eel l es 8edvF CgW d Psr Eesr tthesduhpg **Insurer** Pa\Wgdj

## SECTION I. - INSURING AGREEMENTS

### A. Employment Practices Liability

Cpg **Insurer** dpPcnPF **Loss** yn he hpg : tl theo: tP3tdtF PnndvP3g he hptd **Coverage Section** es 3gpPcoeohpg **Insured** ts vessgvhtes wtfp PsF **Employment Practices Claim** d\Whl Prg PaPtsdh PsF **Insured** r y\Wsa hpg **Policy Period** Psr WgneWgr ts PvveWPsvg wtfp S. ECT O VmN EI O– TCT OSu EmOehtvg eo EdPtl eW Et\Wyl dhPsvg ts hpg Eel l es 8edvF CgW d Psr Eesr ttesd eohptd nedvF.

### B. Third Party Liability Coverage

Cpg **Insurer** dpPcnPF œWl\Loss yn he hpg : tl theo: tP3tdtF PnndvP3g he hptd **Coverage Section** PWdtsa eyheoeW ts vessgvhtes wtfp PsF **Claim** œWThird Party Discrimination Psr œWThird Party Harassment d\Whl Prg PaPtsdh PsF **Insured** r y\Wsa hpg **Policy Period** Psr WgneWgr ts PvveWPsvg wtfp S. ECT O VmN EI O– TCT OSu EmOehtvg eo EdPtl eW Et\Wyl dhPsvg ts hpg Eel l es 8edvF CgW d Psr Eesr tthesd eohptd nedvFm

## SECTION II. – COVERAGE EXTENSIONS

### Workplace Violence Expenses Sublimit

To P dy3tdl thtd dpews ts Tgl 2rblmeohpg . l nœFl gsh8 \PvhtvgdtP3tdtF – gvoPWPhtesd 8 Pagu hpg **Insurer** dpPcn\Wxtr g vexg\Pag œWWorkplace Violence Expense hpg **Insured Organization** tsvvy\Wl \Ugdydtsa r t\Wgvh\Fl œWl PsF **Workplace Violence** mOptd dy3tdl thdpPtc3g nPWeoPsr sehts Pr r thes he hpg : tl theo: tP3tdtF dghoeWp ts Tgl 2mAmeo hpg . l nœFl gsh8 \Pvhtvgd: tP3tdtF – gvoPWPhtesd 8 Pagm

Oe Rghgshtes dpPccPnnoF he hpg **Workplace Violence Expense** Eexg\Pagm

## SECTION III. - DEFINITIONS

### A. Claim uœWnyl\Wdgd eohptd **Coverage Section** dpPtc3g Ps **Employment Practices Claim** uwptvp l gPsdj

A wWhgs r gl Psr œWl esgdhPWl eWsesMl esgdhPWl \Wdgo degdF wpg\Wl Pogatsa Ps **Employment Practices Wrongful Act** utsvgy r tsaj

1. A vtxtauv\Wl ts PouPr l tstd\WPhtxgu\gay dPreWl eWPWSthWPhtes n\Wvggr tsa eWPWSthWPhtes r gl Psr œWl esgdhPWl \Wdgo eWl esgdhPWl \Wdgowptvp td vel l gsvgr 3Fj

   a. Rgvgtnhe\Wdg\Wtvg eoP vel nPtsheW\dtl tdPWngPr tsaB

   b. Rgh\Wl œWoPs tsr tvhl gshe\Wdsa eotsœWl PhtesBeW

   c. Rgvgtnheo P sehtvg eovnP\Wgd\gdB

2. A w\Whgs \gl-ygdh he Ps **Insured** he heœe\Ww Ptxg P dhPhyhg eo dl tthPhtesd \gaPWtsa P nehgshtPc **Claim** u vel l gsvgr 3F hpg \Vgvgtnheodyvp \gl-ygdh3F hpg **Insured**B

3. As PWl tstd\WPhtxg eW\gay dPreWl eWl tsxgdhtaPtPhtes wpgs vesr y vhgr 3F hpg . -yPc. l nœFl gsh8 l nneW\gydtF Eel l tddtes zX. I E/LeWg- ytxPgsdhdPPWgu evPce\Wl \gtas Pagsv Fuwptvp td vel l gsvgr 3F hpg œdtsa eoP sehtvg eo\Wl \ggdu dg\Wtvg eo P vel nPtsheW\dtl tdPWrevyl gsh eo wptvp sehtvg eo pPd 3ggs atxgs he hpg **Insured**m

8 \Wxtr gr u dy vp **Employment Practices Claim** dpPcc sehtsvyr g PsF tsh\gW\PWPce\Wgi hg\WPc dP3e\Wl eW\WgxPsv y nWgr ts n\Wsurga\nvx dpPcc

### B. Employee l gPsd Ps P dWaWl \Wdgdh eWgysn\Wl gr tsg oe hpg **Insured Organization** u wpghpg Wdyvp gl nœFgg td ts Ps P dyng\Wtde Wu vel \\Wel \\Wdy3ewtsPhg mEehpg\W \Wdtgu tsvyr ts PsF œdtl l gu nuPWl l htl gu dg\Pdes PsPc\WasoW\Wl œFggu tsvyr ts hpg **Insured Organization**. As tsr txtr yPc wpe td gPdgr eW

veshWPvhgr he hpg **Insured Organization** dpPscPcde 3g Ps **Employee**u3yhesF tohpg **Insured Organization** nWdxtrgd tsrgl stdvPhtes he dyvp cgPdgr eWeshWPvhgr tsrtxtryPcts hpg dPl gl PssgWPd td nWdxtrgr he hpg **Insured Organization's** gl nœFggdm

C.  **Employment Practices Claim** l gPsd PsF **Claim** œWPs **Employment Practices Wrongful Act**m

D.  **Employment Practices Wrongful Act** l gPsd PsF PvhyPceWPccagr j

1.  5 Wesaoyc rtdl tddPcurtdvpPWdg eWPgW tsPhtes zgthpgWPvhyPceWvesdhWyvhtxgLeo gl nœFl gshutsvcyrtsa 3WgPvp eoPs tl ncdgr gl nœFl gshveshWPvfB

2.  . l nœFl gshWdcPhgr pPWPddl gshztsvcyrtsa3yhsehdl thgr he dgiyPcpPWPddl gshLB

3.  . l nœFl gshWdcPhgr rtdvW tsPhtes ztsvcyrtsa3yhsehdl thgr he rtdvW tsPhtes 3Pdgr ynes Paguagsr gW WPvguvecœWsPhtesPcœWatsuWdcatesudgiyPceWgshPhtes eWnWggWdsvgunWgasPsvFeW tdP3tdhFLB

4.  . l nœFl gshWdcPhgr WyhPdPhtesB

5.  . l nœFl gshWdcPhgr l tdWgnWdgshPhtes he Ps **Employee** eWPnndvPsheWgl nœFl gsh wthp hpg **Insured Organization**B

6.  . l nœFl gshWdcPhgr c3gcuddPsrgWpyl tdPhtesurgoPl Phtes Psr œWtsxPdtes eonWxPvFB

7.  5 Wesaoyc Ptcy W he gl nœFeWnW elngB

8.  5 Wesaoyc rgnWxPhtes eo vPWggWenneWystiFu wWesaoyc rgl ehtes eWsgacdagsh **Employee** gxPcyPhtesu tsvcyr tsa hpg atxtsa eorgoPl PheWfdhPhgl gshd ts vesssgvhtes wthp Ps **Employee** WgcgWsvgB

9.  . l nœFl gshWdcPhgr wWesaoyc rtdvtncdsgB

10.  DPtcyWg he aWPshhgsyWgleWnWPvhtvg nWxttgagdB

11.  DPtcyWg he nWdxtrg eWgsœWg Prg-yPhg eWvesdtdhgsh eWdPst) Phtes necdvtgd eWnWevgry Wgd WdgPhtsa he gl nœFl gshngWeW PsvgB

12.  VtecPhtesd eohpg œœewtsa cgr gWPcoPwd zPd Pl gsrgr Ltsvcyrtsa PccWgayoPhtesd nWl ycaPhgr hpgWgysr gW

    a.  DPl tdFPsrk grtvPc: gPxg Avheo1; ; , B

    b.  Al gWsPsd wthp – tdP3tdhtgd Avheo1; ; 2 zA– ALB

    c.  EtxtcRtaphd Avheo1; ; 1B

    d.  Aag – tdvW tsPhtes ts . l nœFl gsh Avh eo 1; " " zA – . ALu tsvcyrtsa hpg l œ rgW5 eWgWdf Ugsgdh 8Whgvhtes Avheo1; ; 0BeW

    e.  Cthg VTTeohpg EtxtcRtaphd: Pw eo1; " 4 zPd Pl gsrgrL Psr 42 ' nSnEmSgvhtes 1; 7, uPd wgccPd hpg 8WgasPsvF – tdvW tsPhtes Avheo1; " 7B

13.  VtecPhtes eoPs **Insured Person's** vtxtcWaphd WdcPhtsa he PsFeohpg P3exgBeW

14.  Ogadagsh ptWsau Wghgshesu hWPtstsa eWdyngWtdtesu tsœtvhtes eo gl ehtesPcrtdhWgddu eWxtecPhtes eo Ps tsrtxtryPgd vtxtcWaphd Wdphduwpgs Pccagr ts vesbysvhtes wthp PsF eohpg œWgaetsa thgd d1mfpWayap 1, m

wpghpgWdyvp **Employment Practices Wrongful Act** Pd rgdvW3gr ts 1M44 P3exg td vel l thgr rtWgvhnFu tsrtWgvhnFu tshgshtesPdF eWystshgshtesPdFu3yhesF tohpg **Employment Practices Wrongful Act** PvhyPdF eW PccagsrF ngWPtsd he Pvhd vel l thgr 3F Ps **Insured** Psr PWg Pccagsr PaPtsdh Ps **Insured** 3F Ps **Insured Person** eWPnndvPshœWgl nœFl gshwthp hpg **Insured Organization**m

E.  **Insured** l gPsd PsF **Insured Organization** Psr œWPsF **Insured Person**m

F.  **Insured Person** l gPsdj

1.  AsF nPdhunWdgdsheWyhyWgrtWgvhveWeœavgWeW **Employee**ul PsPagl gshvel l thgg l gl 3gWeW gl 3gWf eohpg UePWl eok PsPagWeohpg **Insured Organization**BeW

2.  Ts hpg gxgshhpg **Insured Organization** eWP **Subsidiary** hpgWeoeenegWPgd eyhdtrg hpg ' sthgr SHPgduhpgps hpg gW **Insured Person** Pcde l gPsd hpedg hthgdunedthesd eWvPnPvthtgd œWdyvp œWtgas **Insured Organization** eW**Subsidiary** hpPhPWgWg g-ytxPgsh he hpg nedthesd eortWgvhneWWl eWeœavgWts hpg ' sthgr SHPgdm

**G.  Loss** l gPsd r Pl  Pagd ztsvgvrtsa 3Pv( nPF Psr  oWshn PFLudgthgl gshduty ral gshd ztsvgvrtsa n\Y/MPsr nedhM lyr al gshtshg\Y/dhes P vexg\Y/gr lyr al gsh LPsr **Defense Expenses** m Loss zehpg\Y/hpPs **Defense Expenses** L dpPccsehtsvgr gj

1.  AsF Pl  eyshoeW\Y/wptvp hpg **Insureds** P\Y/ sehds PsvtPdF dP3cg eW eWwptvp hpg\Y/gl td sehcgaPc\Y/gvey\Y/g he hpg **Insureds** B

2.  Al  eyshd ewgr ysr g\Y/PsF gl  noeFl  gshvesh\Y/Pvhun P\Y/hsg\Y/dptnudhev( eW ehpg\Y/Pewsg\Y/dptn Pa\Y/gl  gshueW\Y/PsF ehpg\Y/Pv Fng eovesh\Y/Pvh B

3.  −tdP3tdhFu devtPc dgvy\Y/MFu weW\Y/gl  vel  ngsdPhtesu l  gr tvPc tsdy\Y/Psvgu \Y/gh\Y/gl  gsh eW ngsdtes  3gsgdh n PFl  gshdueW\Y/ghtgl  gsh PFl  evshd \Y/gn\Y/gdgshtsa gl  noeFl  gsh\Y/gdPhgr  3gsgdhn PFl  gshd B

4.  Cpg vedheov\Y/g Phtsa eW\Y/gtsdhPhtsa gl  noeFl  gsh B

5.  AsF Pl  eyshd ewgr he PsF **Employee** Pd wPagd eWwel  ngsdPhtes n\Y/gxteyd\Y/F tsvy\Y/gr eW\Y/xgdhgr  wthpeyh \Y/gaPW\Y/ he PsF **Claim** B

6.  EtxtceW\Y/W` tsPccdsgd eW\Y/ngs Pdtgd B

7.  CPi gduwpghpg\Y/Vewgr  he eW3F PsF **Insured** B

8.  Al  eyshdutsvgr tsa **Defense Expenses** u PW\Y/htsa eyh eou 3Pdgr  ynes eWPth\Y/W3y hP3cg he  Pvhy Pce W\Y/Pccgagr dP3tdhF eW\Y/vedhd tsvy\Y/gr  3F PsF **Insured** he l  er td PsF 3ytrtsa eW\Y/n\Y/gnWF ts e\Y/gWhe l  P( g dyvp 3ytr tsa eWh\Y/gh\Y/gWFl  e\Y/g Pvvgddt3cg eW\Y/Pvvel  l  er Phtsa he PsF r tdP3gr  ng\Y/gsueW\Y/PsF Pvhy Pce W\Y/Pccgagr dP3tdhF eW vedhd tsvy\Y/gr  3gsgdgvshes wthp PsF gr yvPhtesPcu dgsdthxthF eW ehpg\Y/g\Y/vel eWeWPhg n\Y/g\Y/aPW\Y/l u nedvF eW dgl  tsPW\Y/gPhtsa he Ps **Employment Practices Claim** B

9.  k Phtg\Y/h\Y/hpPhl  PF 3g ystsdy\Y/W3cg ysr g\Y/hpg dPw ny\Y/dy Pshhe wptvp hptd nedvF dpPcc3g vesdh\Y/gr m

Cpg −. DTOTCTl O eo **Loss** dpPcctsvgr g nysthtxg eW\Y/gi gl  ndP\Y/Wn r Pl  Pagd Psr  hpg l  ydtndtgr  neWtes eo PsF l  ydtndtgr r Pl  Pag P\Y/wP\Y/WutoPsr wpg\Y/g tsdy\Y/W3cg\Y/gm DeWhy\Y/Wedgd eor ghg\Y/W tstsa wpg\Y/Phg\Y/Wny sthtxg eW\Y/gi gl ndP\Y/W r Pl  Pagdue\Y/hpg l  ydtndtgr  neWtes eo PsF l  ydtndtgr r Pl  Pag PwP\Y/W\Y/Wdtsa o\Y/Wl  PsF **Claim** dpPcc3cg tsdy\Y/W3cg 3F dPwuhpg **Insurer** Pa\Y/gdd he P3tr g 3F hpg dPw eowptvpgxg\Y/gy\Y/gr tvhes td Pnnd vP3cg he dyvp **Claim** Psr  tdh l  edhdPxe\Y/W3cg he hpg **Insured** ts hpPh\Y/gaPW\Y/m

**H.  Premises** l gPsd hpg 3ytr tsaduo Pvtd htgd eWh\Y/g\Y/Wng\Y/Wgd evvyntgr  3F hpg **Insured Organization** ts vesr yvhtsa thd 3ydtsgsddm

**I.  Third Party** l gPsd PsF ng\Y/Wesz dLwthp wpel  Ps **Insured** tshg\Y/WPvhdm

**J.  Third Party Discrimination** l gPsd PsF r tdvW` ts Phtes 3F Ps **Insured** ts ptd eW\Y/pg\Y/W\Y/PnPvthF Pd dyvp PaPtsdh P **Third Party** 3Pdgr  es dyvp **Third Party's** WPvgu veeW\Y/vv\Y/\Y/gr u \Y/gdatesu Pagu agsr g\Y/Ws Phtes Pce W\Y/Wtsudgi y Pc eW\Y/gsh Phtes eWh\Y/g\Y/Wg\Y/Wsvgu r tdP3tdhFun\Y/gas PsvF e\Y/g ehpg\Y/W\Y/Whgvghgr  dhPhyd hpPh td n\Y/gWhgvhgr  ny\Y/dy Pssh he PsF Pnnd vP3cg ur gl  aPvhdhPrhg e\Y/gev PcdhPrhy hg e\Y/Wtsd Psvgm

**K.  Third Party Harassment** l gPsd PsF FFng eodgi y Pce W\Y/gagsr g\Y/Vo PW\Y/ddl  gshPd wgccPd WPvtPcu\Y/gdatey dudgi y Pc eW\Y/gshPhtesun\Y/gas PsvFur tdP3tdhFu PaguoWsPhtes Pce W\Y/gshtPce W\Y/g\Y/Wats hM3Pdgr  pPW\Y/dddl  gsh hpPhtd 3F Ps **Insured** he P **Third Party** m

**L.  Workplace Violence** l gPsd PsF tshg\Y/shesPcPsr  ysdPwoyc Pvhj

1.  eor g Pr F\Y/ œ\Y/Wg tsxeoxtsa hpg ydg eo\Y/ghpPcwg Pnes BeW

2.  hpg hp\Y/g\Y/Pheor g Pr F\Y/ œ\Y/Wg tsxeoxtsa hpg r tdn\Y/PF eo P\Y/ghpPcwg Pnesu

wptvp evvy\Y/Wl es e\Y/Ws hpg **Premises** Psr  wptvp r tr  e\Y/Weyor  \Y/gdydn ts 3er td\Y/F tsby\Y/WF e\Y/Wr g Php he Ps **Insured Person** m

**M.  Workplace Violence Expense** l gPsd hpg \Y/g\Y/Pdes P3cg l  eggd Psr  gi ngsdgduleW\Y/vedheoj

1.  Ps tsr gngsr gshdgvy\Y/MF vesdy dPshoeW\Y/stsgh F z, 0Lr PFd œœewtsa hpg r Phg **Workplace Violence** evvy\Y/WB

2.  Ps tsr gngsr gsh ny3cv \Y/gdPhesd vesdy dPshoeW\Y/stsgh F z, 0Lr PFd œœewtsa hpg r Phg **Workplace Violence** evvy\Y/WB

3.  P veysdgdtsa dgl  tsPW\Y/œ\Y/Pcc **Employees** vesr yvhgr  3F Ps tsr gngsr gsh vesdydPsh œœewtsa **Workplace Violence** B

4.  tsr gngsr gshdgvy\Y/MF ay PW` dg\Y/xtvgd œ\Y/gy n he œœdgg z1f Lr PFd BPsr

5.  Ps tsr gngsr gsh oe\Y/gdtv PsPdhm

## SECTION IV. - EXCLUSIONS

Cpg **Insurer** dpPccseh3g dtP3cg he I P(g PsF nPFI gshoeW**Loss** ts vessgvhtes wthp PsF **Claim** I Prg PaPtsdhPsF **Insured**j

1.  AcqgatsauPWdtsa eyheou3Pdgr ynes eWPthW3yhP3cg heuts wpecg eWts nPWuPsF dhtaPhtes tsxeoxtsa PsF **Insured** hpPhwPd vel I gsvgr eWtsthhPhgr nWeWheueVwPd ngsrtsa es eW3gaeWj hpg r Phg Wgg Wgsvgr ts Trgl 4meohpg . I nœFI gsh8WPvhtvgd : tP3tdhF – gvdPWPhtsad 8Pague WPWdtsa eyheoeW3Pdgr ynesuts wpecg eWts nPWuPsF dPvhd eWvtWyI dhPsvgd ysrgWFtsa eWPocgagr ts PsF dyvp nWeWngsrtsa dhtaPhtes B

2.  DeWPvhyPceWPocagr 3ertdF tsbyWfudtv(sgddurtdgPdg eWrgPhp eoPsF ngWesuI gshPcPsaytdp eWgl ehtesPc rtdhWgdddBr PI Pag he eWrgdhWyvhtes eoPsF lPsat3cg nWgWjWFutsvgrtsa œdd eoydg hpgWjeuuwpghpgWeWsehdyvp nWgWgWFtd npFdtvPcFrPI PagrBn\extr gr uhptd . HE:' STO dpPccsehPnndFhe PocgaPhtesd eol gshPcPsaytdp eW gl ehtesPcr tdhWgddd I Prg degoF ts vessgvhtes wthp Ps **Employment Practices Claim**B

    Cpg **Insurer** dpPccseh dtP3cg he I P(g PsF nPFI gshuPsr dpPccpPxg se ryhF he rggosr eWhPF **Loss** eoPsF deWuts vessgvhtes wthp PsF **Workplace Violence**j

    a.  wptvp evvyWdPhPsFœvPhtes ehpgWpPs hpg **Insured Organization's Premises**B

    b.  PWdtsa dWI rgvdPWgr eWysrgvdPWgr wPWI vtxtc wPWI tsdyWgvhtesu Wehu vtxtc vel I ehtesu Wg3gœtes eW WgxeyhtesuI tdhPWfusPxPceWydyWgr newgWaexgWI gshPctshgWgshtesugi nWnWPhtes eVsPhtesPd) PhtesB

    c.  hpPhWgogvhd cgaPcvedhduly ral gshd Psr dgheol gshd tsvyWgr Pd hpg Wgdyh eoPsF **Claim** udytheWgyrtvtPc Pvhtes 3WyaphPaPtsdhPsr **Insured Organization** ts vessgvhtes wthp **Workplace Violence**BeW

    d.  Wgdydtsa dWI hpg ydg eWhpWgPh eo eWg eWxtegxsvg evvyWdsa es hpg **Premises** œWhpg nyWedg eo rgl Psrtsa I esgFudgvyWgtgd eWnWgnWFm

3.  DeWhpg PvhyPcuPocgagr eWhpWgWhgsgrr tdvpPWgur tdngWPcuWgcPdg eWgdvPng eonecyhPshd eWPsF rtWgvhtes eW Wgr-ygdhhe hgdhœWdI esttheWvcgRs ynuWgI exguvesHPtsuWgWhur gheit ioFeWsgyhWPd)g neœyhPshdutsvgrtsa 3yhseh dI thgr he **Claims** Pocgatsa rPI Pag he hpg **Insured Organization**B

    8eœyhPshtsvgr gd z3yhtd sehdI thgr heLPsF dedrud-ytr uaPdgeyd eWhpgW PctWPsheWesHPI tsPshuwpghpgW dxg eWtsPstI Phgutsvgrrtsa dl e( guxPhwWdeehuoyI gduPvtr duPsr wPdhgm 5 Pdhg tsvgr gd z3yhtd sehdI thgr heLI PhgWPdhe 3g WgvFvgruWgdvesrthesgr eWWgdvPtI gr B

4.  DeWxterPhtes eoPsF eohpg Wgdnesdt3tdthgdue3œaPhtesd eWryhgd tl nedgr 3Fj Cpg DPtW: P3eWSHPsr PWd Avh zgi vgnhhpg . -yPc8PF AvhLeWPsF dhPhg eWevPcdHPhyheWeWtsPsvgd eWPwuWgayPhtes hpPhsvg hpPhaexgWjWd nPFI gsh eWPrI tstdhWPhtes eonPagdu peyW weWgru eWgl nœFgg gshtWgl gshdBhpg . I nœFgg hgWWgl gsh Tsvel g SgvyWHF Avh eo 1;" 4Bhpg OPHtesPc : P3eWRgdPhtesd AvhBhpg 5 eWgWArbydh gsh Psr RghWPtsta Oehdvrhtes AvtBhpg Eesdedr Phgr I I st3yd Uyragh RgvesvtgPhtes AvtBhpg I vvynPHtes PcSPhgF Psr 6 gPdp AvhBPsF Wgcd eWWgyaPhtesd eoPsF eohpg eWgWaetsa eWI yœaPhpgr hpgWgysrgWPsr PI gsrI gshd hpgWheBeWPsF dtl teWnWWtdtesd eoPsF œgr gWPcudhPhg eWeWeWcdHPfyheWeWel I es œPw hpPhaexgWj hpg dPI g dy3tgovhl PhtgW aexgWgWgr 3F hpg ePwd WggWgWgsvgr ts hptd dgvhtes gxgs to nPWvyrPWJeWd pXng del g Prr hPtesPceWrtWdgWgsh nWextdtesdBnWextr gr uhptd . HE:' STO dpPccsehPnndFhe **Loss** PWdtsa dWI P **Claim** œWgl nœFI gsh WgrPhgr WghPdtPhesB

5.  AcqgatsauPWdtsa eyheou3Pdgr ynes eWPthW3yhP3cg he PsF weWg Wg9 vel ngsdPhtesu rtdP3tdhF ysr gWeVnyWdyPshhe PsF vesHWPvhe WPaWgI gsh gshuwpghpgWeWPcuwWhgsugi nWgdd eWtI ndgr utsvgrtsa hpg dtP3tdhF eoehpgWd PddyI gr gr 3F Ps **Insured** uysgdd dyvp **Insured** weyœ pXng 3ggs dtP3cg ts hpg P3dgsvg eo dyvp veshWPvh eWPaWgI gshB nWextr gr hptd . HE:' STO dpPccsehPnndFhe **Defense Expenses** ts vessgvhtes wthp Ps **Employment Practices Claim**B

6.  AcqgatsauPWdtsa eyheou3Pdgr ynes eWPthW3yhP3cg he PsF weWg Wg9 vel ngsdPhtesurtdP3tdhF 3gsgdœhdu ysgl nœFI gshvel ngsdPhtesuysgl nœFI gshtsdyWPsvguWgWII Wgl gsh gsh3gsgdœhdudevtPcdgvyWHF 3gsgdœhd eWtl tdPW dPwBneWJWtWgr gr uhptd . HE:' STO dpPccseh PnndFhe **Loss** PWdtsa dWI P **Claim** œWgl nœFI gsh WgrPhgr WghPdtPhesB

7.  AcqgatsauPWdtsa eyheou3Pdgr ynesurtWgvhvFeWsrtWgvhvFWgdydtsa dWI eWts vesdg-ygsvsg eoueWts PsF wPFI tsxeextsa PsF vWI tsPceWrgd3gWgWj mWpg dWPyrrygsh PvtBn\extr gr uhptd . HE:' STO dpPccseh PnndFh e ysgodd dyvp lmlyr al gsh eWhgdhœWds ne PsF Prtyr Wg he PsF **Insured** ts hpg **Claim** dpPccgdhP3tdœp hpPhdyvp TsdyWgr vel I thgr dyvp vWI tsPceWPWyrgshPvhm

Cpg **Wrongful Act** eoPs **Insured** dpPccseh3g tl nyhgr he PsF ehpgWj**Insured** œWhpg nyWedg eor ghgWI tstsa hpg PnndvP3tdhF eohpg . HE:' STOS dghœWp ts S. ECT O TVm

**In Witness Whereof** uh pg **Insurer** pPd vPydgr hptd nedvF he 3g gi gvyhgr Psr Phgdhgr u3yhhptd nedvF dpPtcseh3g xPdr ysegdd veyshgWtasgr es hpg – gvoPWhesd 8 Pag 3F P r ydF Pyhpe Wgr Pagsheohpg **Insurer** rm

SgvWghPW7                                                      8Wgdtr gsh

# PRIVATE COMPANY MANAGEMENT LIABILITY
# RENEWAL APPLICATION



**NOTICE:** THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER DURING THE POLICY PERIOD, OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS SHALL BE REDUCED OR TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE EXPENSES.

## I. GENERAL INFORMATION SECTION

1. (a) Name of Organization:

   Lambda, Inc

   (b) Organization Address:

   250 Montgomery St, 16th Floor

   San Francisco, CA 94104

2. Indicate Coverage and Limit Requested:

   D&O Liability Insurance Coverage:          Yes ☒    No ☐    Limit Requested: $ 1,000,000

   Employment Practices Liability Coverage:   Yes ☒    No ☐    Limit Requested: $ 1,000,000

   Third Party Liability Coverage:            Yes ☒    No ☐

   Fiduciary Liability Insurance Coverage:    Yes ☐    No ☒    Limit Requested: $ N/A

3. Indicate the Type of Limit Requested:

   ☐ Shared Limit of Liability for multiple Coverage Sections

   ☒ Separate Limit of Liability for each Coverage Section

   ☐ Combination of Shared and Separate Limits (provide details):

4. Provide the following information on all Subsidiaries of the Insured Organization. If "None", check here:  None ☒

| Subsidiary Name | Nature of Business | Percent Owned by the Insured Organization | Date Created or Acquired |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

5. As part of this Application, please submit the following with respect to the Applicant:

   *Directors & Officers Liability Coverage:*

   (a) COMPLETE COPY OF LATEST ANNUAL REPORT.  IF AUDITED FINANCIALS, PLEASE INCLUDE AUDITORS NOTES AND A COPY OF LATEST INTERIM FINANCIAL STATEMENT

   (b) CURRENT LIST OF DIRECTORS AND OFFICERS

   (c) COMPLETE COPY OF BY LAWS AND ARTICLES OF INCORPORATION

   *Employment Practices Liability Coverage:*

   (a) EEO-1 REPORT (IF REQUIRED BY FEDERAL LAW)

   (b) EMPLOYEE HANDBOOK

*Fiduciary Liability Coverage:*

(a) A COPY OF THE MOST RECENTLY FILED FORM 5500 OR MOST RECENT AUDITED PLAN FINANCIAL STATEMENTS

(b) IF AN ESOP, A COPY OF THE MOST RECENT STOCK VALUATION

---

**II.  DIRECTORS & OFFICERS LIABILITY SECTION** *(Please complete only if coverage requested)*

1.  Have there been any changes in the Organization operations within the last twelve (12) months or is the Organization currently contemplating any merger or acquisition?  Yes ☐  No ☒
    If "Yes", please provide details on a separate page.

2.  Stock / Unit Ownership of Insured Organization

    (a)  Number of common shares/units owned directly or beneficially by Directors and Officers:  8,796,008

    (b)  Please complete the following information:

| Names of Director or Officer Shareholders | Voting Shares Owned |
|---|---|
| Austen Allred | 18.0% |
| GV | 14.1% |
| Bedrock Capital | 7.1% |
| Shareholders (include individual and corp. names) who are both non-directors and non-officers owning 5% or more of voting shares | Voting Shares Owned |
| Gigafund 0.6 LP | 9.3% |
| Tandem Capital | 8.2% |

*If multiple shareholders, please include attachment

Please identify any family relationships among the individuals listed above:  n/a

---

3.  Has the applicant or any of its subsidiaries had any private placement or security offerings within the last 12 months, or does the applicant or any of its subsidiaries contemplate any private placement or securities offerings in the next 12 months (offerings include any debt offering and/or any offerings under the JOBS Act including but not limited to Crowdfunding)?  Yes ☐  No ☒

    (If "Yes", please provide details on a separate page)

4.  Does the organization have an incident response plan for data breaches that is tested at least annually?  Yes ☒  No ☐
    If No, please provide details on a separate page.

5.  If applicable, is the organization Payment Card Industry Data Security Standard (PCI/DSS) compliant?  Yes ☒  No ☐
    If No, please provide details on a separate page.

6.  Does the organization purchase First Party and Third Party Network Security and Privacy Insurance Coverage?  Yes ☐  No ☒

7.  If applicable, is the organization Health Insurance Portability & Accountability Act (HIPAA) / Health Information Technology for Economic & Clinical Health (HITECH) compliant?  Yes ☒  No ☐
    If No, please provide details on a separate page.

8. Does the organization receive more than 10% of their revenues from any governmental source? Yes ☐ No ☒

9. Does the organization offer, sell, advertise, market or solicit any product or service, or debt collection, employing any automatic/robo dialing, mobile phone texting, faxing, or any other type of communications based mechanism or strategy governed under the rules and regulations of the Telephone Consumer Protection Act of 1991 (TCPA), The Fair Debt Collection Practices Act or any laws governing unsolicited advertising or contacts for collections or promotion of goods or services? Yes ☐ No ☒

10. Does the organization have a contract or agreement with any third party vendor to perform the above services on their behalf? Yes ☐ No ☒

## III. EMPLOYMENT PRACTICES LIABILITY SECTION *(Please complete only if coverage requested)*

1. Number of Employees:

| | Full time: | Part time: | Independent Contractors: | Volunteers: | Total: |
|---|---|---|---|---|---|
| | 161 | 1 | 27 | | 189 |

2. List total number of Employees in the following states:

CA 55          FL 7          NJ 3          NY 10          TX 6

3. Does the Organization anticipate making any reductions in the work force within the next twelve (12) months? Yes ☐ No ☒
If "Yes", please provide details on a separate page.

4. How many Employees or Officers have been terminated within the last twelve (12) months?
Number of Employees:    55          Number of Officers:    1

## IV. FIDUCIARY LIABILITY SECTION *(Please complete only if coverage requested)*

1. Please provide the following information for the largest four Plans of the Applicant:

| Plan Name | *Plan Type | **Plan Status | Total Plan Assets ($) | Annual Contributions | Number of Participants |
|---|---|---|---|---|---|
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| *Plan Types: Defined Benefit (DB); Defined Contributions (DC); ESOP (E); Self-Funded Welfare Benefit Plan (W); Other (O) – Attach explanation | | | | | |
| **Plan Status: Active (A); Frozen (F); Sold (S); Termination (T) – If any plan has been termination, indicate date of transaction | | | | | |

2. Has any plan (a) been amended within the last 12 months in a way that will result in the reduction of benefits or are any such amendments anticipated within the next 12 months; or (b) been merged with another plan, terminated or sold within the past 2 years or is any such merger, Termination, sale or freezing anticipated in the next 12 months? Yes ☐ No ☐
If "Yes", please provide details of implementation, disclosure and any relevant blackout periods.

3. Does any plan invest in a mutual fund, collective trust or similar investment pool that receives investment management services from the Organization for a fee? Yes ☐ No ☐
If "Yes":
How often are these fees reviewed by the trustees for fairness? _____
Are these fees disclosed to participants? Yes ☐ No ☐

4.  Are any Plans non-compliant with plan agreements or ERISA?
    If "Yes", please provide details on a separate page.                    Yes ☐   No ☐

The undersigned authorized Officer of the Organization, on behalf of the Organization and its Subsidiaries, and on behalf of the Directors and Officers of the Organization and its Subsidiaries declares that to the best of his/her knowledge and belief, the information, particulars, documents, representations and statements contained in, attached or referred to in this application for insurance and/or as a result of the underwriting process are true and accurate and recognizes that the Insurer, in issuing this policy, will rely on such information, particulars, documents, representations and statements.

Although the signing of this application does not bind the undersigned to effect insurance, the undersigned agrees, on behalf of the Organization and its Subsidiaries, and on behalf of the Directors and Officers of the Organization and its Subsidiaries, that the information, particulars, documents, representations and statements contained in, attached or referred to in this application for insurance and/or as a result of the underwriting process shall be the basis of the contract should a policy be issued and that this application will be attached to and will become part of such policy.  The Insurer is hereby authorized to make any investigation and inquiry it deems necessary in connection with this application.

**NOTE:**  This application must be signed by the Chairman of the Board or President and dated within thirty (30) days of the effective date of coverage.

The undersigned authorized Officer agrees that if the information supplied on this application changes between the date of this application and the effective date of the insurance, he/she (undersigned) will immediately notify the Insurer of such changes, and the Insurer may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance.

Signature _____Austen Allred_____     Title __CEO_____
           38545C9FD334461
                        (Chairman of the Board or President)

Date   6/4/2020 | 11:36 AM PDT               Organization __Lambda Inc_____

Submitted By _____     Date _____
                 (Producer)

**SIGNATURE REQUIRED**

**NEW YORK FRAUD STATEMENT**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

_____Austen Allred_____               6/4/2020 | 11:36 AM PDT
   38545C9FD334461
          Applicant's Signature                              Date

**No Signature Required**

**ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

## ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

## ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

## ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form.  Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

## CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

## COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

## DELAWARE FRAUD STATEMENT

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

## DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

## FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

## HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

## IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

## INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

## KANSAS FRAUD STATEMENT

An act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

## KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any

fact material thereto commits a fraudulent insurance act, which is a crime.

## MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

## MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

## MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

## NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

## NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

## NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

## OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

## OKLAHOMA FRAUD STATEMENT

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## OREGON FRAUD STATEMENT

Any person who knowingly files a claim containing a false or deceptive statement for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

## PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## PUERTO RICO FRAUD STATEMENT

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

## TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.