# EXHIBIT **G**

# MusickPeeler

ATTORNEYS AT LAW

DAVID A. TARTAGLIO
d.tartaglio@musickpeeler.com
(213) 629-7705

333 SOUTH HOPE STREET, SUITE 2900
LOS ANGELES, CALIFORNIA 90071-3048

TELEPHONE:  (213) 629-7600
FACSIMILE:  (213) 624-1376
WWW.MUSICKPEELER.COM

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
VENTURA COUNTY

FILE NO.: 79106.1746

September 26, 2024

**VIA EMAIL**

Lilit Asadourian, Esq.
Partner
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, CA 90067-2904
lasadourian@btlaw.com

<table>
<tr><td>Re:</td><td>**ISA Claims**</td><td></td></tr>
<tr><td></td><td>Insurer:</td><td>RSUI Indemnity Company</td></tr>
<tr><td></td><td>Insured:</td><td>Lambda, Inc.</td></tr>
<tr><td></td><td>Claimants:</td><td>Rob Bennett; Jessica Fuller; Yeraldina Estrella; Matthew Means; Harrison Aguiar; Alexander Goncalves; Brett McAdams; Kyle Willard</td></tr>
<tr><td></td><td>Policy No.:</td><td>NPP688513 (7/31/2020 – 7/31/2021)</td></tr>
<tr><td></td><td>RSUI Claim No.:</td><td>703-159237</td></tr>
</table>

Dear Ms. Asadourian:

We are counsel for RSUI Indemnity Company with respect to Lambda, Inc.'s claims for coverage under the above-referenced policy for the various claims identified below. This letter responds to your July 17, 2024 letter on behalf of Lambda Inc. to William Nielsen at RSUI, and provides RSUI's Coverage position.

As discussed below, RSUI maintains its denial with respect to the class action lawsuit as it was dismissed prior to being tendered to RSUI. Additionally, there does not appear to be any potential for coverage under the RSUI Policy for the individual arbitration claims of the above-referenced claimants. However, in an abundance of caution, RSUI agrees to participate in the defense of those claims subject to a full and complete reservation of rights, including the right to allocate defense costs, as well as to deny coverage for and seek reimbursement for amounts paid towards claims that were not potentially covered. *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489,

Musick, Peeler & Garrett LLP

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 2


497 (2001); *Buss v. Superior Court*, 16 Cal.4th 35 (1997); *Johansen v. California State Auto. Ass'n Inter–Ins. Bureau*, 15 Cal.3d 9, 18 (1975).

A more detailed discussion of RSUI's coverage positions follows a description of our understanding of the relevant background.

## I.    BACKGROUND

### A.    The RSUI Policy

RSUI Indemnity Company issued Private Company Management Liability Policy, policy number NPP688513 to Named Insured Lambda Inc. for the policy period of July 31, 2020 to July 31, 2021 (the "Policy"). The Policy included Directors and Officers Liability coverage subject to a $ 1,000,000 limit of liability and a $ 100,000 retention applicable to insuring agreement C and a prior and/or pending litigation date of September 26, 2018.

The Policy's *Common Policy Terms and Conditions Coverage Section-Private Company* form, form number RSG 241001 0118, as amended by the Policy's *Amended Settlement Provision* endorsement, form number RSG 204160 0118, provides:

---

**SECTION III. - DEFINITIONS**

\* \* \*

**D.  Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim,** including any appeal therefrom. **Defense Expenses,** however, shall not include:
1.  Remuneration, overhead or benefit expenses associated with any **Insured Person;** or
2.  Any obligation to apply for or furnish any appellate or similar bond.

\* \* \*

**SECTION V. - CONDITIONS**

**A.  Duty to Defend**

It shall be the right and the duty of the **Insurer** to defend any **Claim** against any **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of its choosing. No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld. Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy. The **Insurer** shall have the right to appoint counsel, investigate and conduct negotiations and, with the consent of the **Insured**, to enter into a settlement of any **Claim** that the **Insurer** deems appropriate. If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:
1.  The amount for which the Insurer could have settled such Claim plus Defense Expenses incurred as of the date such settlement was proposed in writing by the Insurer ("Settlement Opportunity Amount"); plus

---

Musick, Peeler & Garrett LLP

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 3

**2.** Eighty percent (80%) of covered Loss in excess of such Settlement Opportunity Amount subject to the policy's Limit of Liability.

In no event shall the **Insurer** be liable under this policy for more than the Limit of Liability shown in Item 4. of the Common Policy Declarations Page.

\* \* \*

**C. Notice of Claim or Circumstance**

**1.** If, during the **Policy Period** or Extended Reporting Period (if applicable), any Claim is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** as soon as practicable after such **Claim** is first made, but in no event shall such notice be given later than sixty (60) days after either the **Policy Period** expires or any earlier cancellation date of this policy.

**2.** If, during the **Policy Period** or Extended Reporting Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any **Insured** for any **Claim** made against the **Insured** for any **Wrongful Act** occurring prior to the end of the **Policy Period**, and as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the **Insurer** written notice, of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**. The written notice shall include, at a minimum:

**a.** The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and

**b.** The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**.

Further, if any **Claim** first made after the **Policy Period** expires is nonetheless deemed to be made during the **Policy Period** pursuant to Section V.B.4., then it is a condition precedent to coverage for such **Claim** that the **Insured** report it to the **Insurer** as soon as practicable.

\* \* \*

**E. Allocation**

If both **Loss** covered under this policy and loss not covered under this policy are jointly incurred either because a **Claim** includes both covered and non-covered matters or covered and non-covered causes of action or because a **Claim** is made against both an **Insured** and any other parties not insured by this policy, then the **Insured** and the **Insurer** shall use their best efforts to fairly and reasonably allocate payment under this policy between covered **Loss** and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.

If the **Insurer** and the **Insured** agree on an allocation of **Defense Expenses,** based on covered and non-covered matters or persons, the **Insurer** shall advance **Defense Expenses** allocated to covered **Loss.** If there is no agreement on an allocation of **Defense Expenses,** the **Insurer** shall advance **Defense Expenses** that the **Insurer** believes to be covered under this policy until a different allocation is negotiated, arbitrated, or judicially determined.

Any negotiated, arbitrated or judicially determined allocation of **Defense Expenses** on account of a **Claim** shall be applied retroactively to all **Defense Expenses** on account of such **Claim,** notwithstanding any prior advancement to the contrary. Any advancement or allocation of **Defense Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other loss on account of such **Claim.**

Musick, Peeler & Garrett LLP

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 4

The Policy's *Directors and Officers Liability Coverage Section-Private Company* form, form number RSG 241007 0118, provides:

---

**SECTION I. - INSURING AGREEMENTS**
**Directors and Officers Liability**

\* \* \*

**C.** With the **Insured Organization,** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

\* \* \*

**SECTION III. - DEFINITIONS**
**A.** **Claim,** either in the singular or the plural, means:
  1. A written demand for monetary or non-monetary relief;
  2. A civil, criminal, administrative, regulatory or arbitration proceeding, or arbitration demand for monetary or non-monetary relief which is commenced by:
     **a.** Receipt or service of a complaint or similar pleading;
     **b.** Return of an indictment or filing of information; or
     **c.** Receipt of a notice of charges;
  3. A written request to an **Insured** to toll or waive a statute of limitations regarding a potential **Claim,** commenced by the receipt of such request by the **Insured;**

\* \* \*

**F.** **Loss** means damages, settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses.** **Loss** (other than **Defense Expenses**) shall not include:
  1. Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds;**
  2. Amounts owed under any contract, partnership, stock or other ownership agreement, or any other type of contract;
  3. Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments; 4. The cost of creating or reinstating employment;
  5. Any amounts owed to any **Employee** as wages, compensation, severance or benefits previously incurred or vested without regard to any **Claim;**
  6. Civil or criminal fines or penalties;
  7. Taxes, whether owed to or by any **Insured;**
  8. Amounts, including **Defense Expenses,** arising out of, based upon or attributable to actual or alleged liability or costs incurred by any **Insured** to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person;
  9. Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

\* \* \*

**SECTION IV. - EXCLUSIONS**
The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured:**

\* \* \*

---

Musick, Peeler & Garrett LLP

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 5

---

**2.** Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any criminal or deliberate fraudulent act; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** committed such criminal or fraudulent act;

**3.** Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining of any profit or advantage to which an **Insured** was not legally entitled; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** gained profit or advantage to which such **Insured** was not legally entitled;

\* \* \*

**7.** Alleging, arising out of, based upon or attributable to, in whole or in part, the performance or rendering of or failure to perform professional services, where such services are undertaken for others for a fee;

\* \* \*

**12.** With respect to INSURING AGREEMENT C. of this policy, only:

    **b.** For actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships; or

---

The Policy's *Absolute Contractual Exclusion* endorsement, form number RSG 244018 0420, provides:

---

**B.** The following is added to Section IV. EXCLUSIONS of the Directors and Officers Liability Coverage Section:

Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured,** unless such **Insured** would have been liable in the absence of such contract or agreement.

---

The Policy's *Exclusion-Broadcasting, Advertising and Publishing* endorsement, form number RSG 206105 0118, provides:

---

The following is added to SECTION IV. – EXCLUSIONS, of the Directors and Officers Liability Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to, directly or indirectly or in any way involving:

a. Publishing or re-publishing;
b. Advertising;
c. Broadcasting or re-broadcasting;
d. Telecasting or re-telecasting;
e. Any actual or alleged piracy;

---

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 6

---

f.   Any actual or alleged idea misappropriation under implied contract;
g.   Any actual or alleged libel, slander, or other defamation or invasion of privacy in connection with any advertisement, publicity, article, broadcast or telecast;
h.   Any actual or alleged plagiarism, infringement of patent, copyright, trademark, title or slogan; or
i.   Any actual or alleged false arrest, false imprisonment, wrongful entry or eviction or other wrongful invasion of the right to private occupancy, wrongful detention, malicious prosecution, humiliation, defamation of character or invasion of rights of privacy.

---

**B.     The Claims**

**1.      The 2021 Claims**

We understand that Lambda received arbitration demands related to substantially the same practices discussed below from Heather Nye, Johnathan Stickrod and Ninh Nguyen on May 13, 2021, which were tendered to RSUI on June 17, 2021. RSUI denied coverage for those claims by letter dated July 2, 2021. Brenda Velasquez's demand for arbitration against Lambda is dated June 18, 2021 and was tendered to RSUI on July 19, 2021.  RSUI denied coverage for that claims by letter dated August 4, 2021.

**2.      The ISA Class Action**

On March 16, 2023, Plaintiffs Jessica Fuller, Alexander Goncalves, Brett McAdams, and Quinn Molina filed the lawsuit captioned *Jessica Fuller et al. v. Bloom Institute of Technology et al*, San Francisco Superior Court Case No. CGC-23-605179 (the "ISA Class Action") against Bloom Institute of Technology and Austen Allred related to the substantially the same practices discussed below. The complaint alleges Mr. Allred is Lambda's founder and CEO but asserted claims against him in his personal capacity. On March 27, 2013, Bloom filed a notice of removal. Thereafter Bloom and Allred filed motions to compel arbitration and to dismiss. The court granted the motion to compel arbitration and dismissed the ISA Class Action on January 9, 2024. See Document 64, U.S. Dist. Ct. N.D. Cal. Case No. 3:23-CV-01440-AGT. In support of the motion to compel arbitration, Bloom argued strenuously that the first and third causes of action arose directly out of the ISAs that plaintiffs entered and the second cause of action related to either the ISA or the plaintiff's agreement to enter Lambda's program. On May 1, 2024, several months after the ISA Class Action had been dismissed, Lambda tendered the ISA Class Action. RSUI denied coverage for the ISA On May 14, 2024.

**3.      The ISA Arbitration Claims**

After dismissal of the ISA Class Action, the following former students made arbitration demands against Lambda and Austen Allred, in his individual capacity: Rob Bennett (February 14, 2024); Jessica Fuller (February 14, 2024); Yeraldina Estrella (March 12, 2020);

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 7

Matthew Means (March 12, 2024); Harrison Aguiar (March 12, 2024); Alexander Goncalves (March 12, 2024); Brett McAdams (April 5, 2024); and Kyle Willard (May 28, 2024) (collectively the "ISA Arbitration Claims")

The allegations in the ISA Arbitration Demands are similar to each other and those in the ISA Class Action. They allege that: Lambda operates an online school; that it operated improperly without state approval until August 17, 2020; it misrepresented its status prior to approval; it improperly charged tuition prior to approval; it improperly made loans to students for the school through ISAs, which are allegedly agreements where the student does not pay tuition upfront but agrees to pay a percentage of their salary after they get a job; it made false/misleading statements about job placement rates and how the ISAs worked to get students to enroll and/or sign ISAs. All of the individual claimants allege that they entered ISAs with Lambda between April and August of 2020 and attended Lambda's program. All allege that their decision to attend was based on misrepresentations in advertisements, but for which they would not have attended or entered an ISA. Demand ¶¶ 111-119. Only Alexander Goncalves alleges any communications with Lambda outside of advertisements leading to his decision to attend. Demand ¶ 112.

Based on those allegations, they assert claims under California's unfair business practice laws—the Unfair Competition Law (Business and Professions Code section 17200 et seq), the Consumers Legal Remedies Act (Civil Code section 1750 et seq) and the False Advertising Law (Business and Professions Code section 17500 et seq)—as well as for negligent and intentional misrepresentation.

### 4.    The Consumer Financial Protection Bureau Consent Order

We understand Lambda and Allred entered into a Consent Order with the U.S. Consumer Financial Protection Bureau ("CFPB") on April 17, 2024. Among other things, the CFPB found Lambda lured students into the program with false promises and deceptive marketing. According to the CFPD, it found they: Hid the cost and true nature of students' debt under the ISAs in violation of the law; Tricked prospective students with inflated job-placement rates; Misrepresented their financial interests by selling the loans to investors; and Engaged in illegal contract practices in violation of a Federal consumer protection known as the Holder Rule. We understand that under the consent order:  Lambda was required to cease collecting payments under ISA from certain graduates who did not have a qualifying job in the past year; ISAs were reformed to eliminate finance charges for students who graduated the program more than 18 months ago and obtained a qualifying job making $70,000 or less; Lambda was required to allow students to withdraw from the program and cancel their ISA or continue in the program with third party loans; and Lambda and Allred were required to pay $64,000 and $100,000 in civil penalties, respectively.

Musick, Peeler & Garrett LLP

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 8

## II.        RSUI'S COVERAGE POSITION

### A.        RSUI Maintains Its Denial With Respect To The ISA Class Action

It is unclear whether Lambda's July 17, 2024 letter is asking RSUI to reconsider its position on the ISA Class Action or merely mentioning it support an argument that the ISA Arbitration Claims are timely tendered under the Policy under Condition B.4 cited above.

To the extent the letter was asking RSUI to reconsider, RSUI notes Lambda tendered a copy of the state court complaint in the ISA Class Action on May 1, 2024, several months after the ISA Class Action had been dismissed. It is black letter law in California that the duty to defend arises upon tender and is discharged when the action is concluded, if not sooner. *Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38 (1997). RSUI could not have had any duty to defend the ISA Class Action as it had been dismissed prior to tender. Accordingly, RSUI respectfully maintains its denial for the ISA Class Action.

### B.        Agreement To Defend ISA Arbitration Claims Under A Reservation Of Rights

Under the terms cited above, RSUI agreed to defend any Claim against Lambda for which coverage applies under the Policy through counsel selected by RSUI. As discussed below, any liability related to the ISAs, Lambda's loans to students through ISAs, and Lambda's advertising of its program is not covered under the Policy. While it does not appear that any of the claims above would be covered, RSUI agrees to defend Lambda against the ISA Arbitration Claims under a full and complete reservation of rights, including, but not limited to, the right to withdraw from the defense, the right to seek reimbursement of defense fees and costs paid and the right to disclaim coverage. *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489, 497 (2001); *Buss v. Superior Court*, 16 Cal.4th 35 (1997); *Johansen v. California State Auto. Ass'n Inter–Ins. Bureau*, 15 Cal.3d 9, 18 (1975).

Pursuant to its right and duty to defend, RSUI has assigned the law firm of Freeman Mathis as defense counsel, which will be contacting you directly about the defense. Of course, Lambda's personal counsel may associate in the defense at Lambda's expense.

RSUI's agreement to defend is subject to various Policy terms and is neither intended to be nor should it be construed as a waiver of terms or conditions not raised in this letter. The following Policy provisions are or may be implicated:

Musick, Peeler & Garrett LLP

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 9

**1.      The Policy's $100,000 Retention Applies**

The Policy's $100,000 Retention applies to this claim. Under the Retention, Lambda responsible for the first $100,000 of allocated Loss, including Defense Expenses and RSUI is only liable for allocated Loss in excess of that Amount.

**2.      Allocation of Loss**

Under Condition E, Allocation, where Loss, including Defense Expenses, is incurred in connection with a Claim presenting both covered and uncovered matters, it must be allocated. RSUI and Lambda agreed to use their best efforts to fairly and reasonably allocate payment under the Policy between covered Loss and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action. This allocation applies to Defense Expenses within the Retention, as well as Loss, including Defense Expenses, in excess of it.

Because the ISA Arbitration Claims do not currently seek any covered Loss, the majority of the Loss, including Defense Expenses, should be allocated to Lambda to be borne outside of coverage under the Policy.  RSUI proposes 4/5 of the Loss, including Defense Expenses, be allocated to non-covered matters to be borne by Lambda. To be clear, RSUI allocates 80% of the expenses to Lambda and 20% to RSUI.   This allocation also applies to the SIR.  Please advise whether Lambda agrees to this allocation and provide the basis for an alternative allocation if you do not. In the interim, RSUI will apply the 4/5 allocation unless and until the parties reach a different agreement or a different allocation is a arbitrated or judicially determined.

**3.      Unapproved Defense Costs and Settlements Are Not Covered**

Under the terms above defense fees and costs incurred or settlements made without the prior written consent of RSUI do not constitute Loss and are not covered by the Policy. RSUI has appointed defense counsel pursuant to its right under the Policy and does not consent to any additional fees and costs by Lambda's current defense counsel. Accordingly, any defense fees and costs incurred and settlements entered without RSUI's prior written consent are not covered by the Policy, do not constitute Loss, and do not count against the Retained Limit. RSUI reserves all rights in this regard.

**4.      Past Defense Bills**

To the extent that Lambda seeks reimbursement for defense fees and expenses incurred in defense of the ISA Arbitration Claims after Lambda's tender and prior to RSUI's agreement to defend, please provide those bills to us and RSUI will review them and respond as appropriate.

Musick, Peeler & Garrett LLP

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 10

**C.**      **Other Terms and Exclusions May Apply to Preclude Coverage in Whole or in Part**

Neither the foregoing nor the following is intended to be an exhaustive discussion of coverage issues that may arise or a waiver of any terms or conditions not raised. The Policy contains a number of terms and exclusions that might apply to preclude or limit coverage. Such terms and exclusions include, but are not limited to, the following:

1.      Subject to other terms and conditions, the Policy only potentially covers Loss, which is specifically defined not to include "Amounts owed under any contract, partnership, stock or other ownership agreement, or any other type of contract," "Civil or criminal fines or penalties," and "Matters that may be uninsurable under the law …." All of the ISA Arbitration Claims seek restitution in the form of refunds of amounts paid to Lambda. Such restitution is not Loss under the Policy and is not covered. All of the ISA Arbitration Claims seek punitive damages, which are uninsurable under California law, are not Loss under the Policy and are not covered. RSUI reserves all rights in this regard.

2.      The Policy's Absolute Contractual Exclusion endorsement precludes for Loss in connection with any Claim, "Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an Insured, unless such Insured would have been liable in the absence of such contract or agreement." All of the ISA Arbitration Claims allege the claimant entered ISAs and agreements to attend the Lambda program and assert claims arising out of those contracts. Coverage for claims arising out of those contracts, including claims for restitution, is precluded by the Policy's Absolute Contractual Exclusion may apply to preclude coverage in whole or in part and RSUI expressly reserves all rights in that regard.

3.      Exclusion **12.b.** precludes coverage respect to INSURING AGREEMENT C for Loss in connection with any Claim, "For actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships." All of the ISA Arbitration Claims allege that Lambda violated various laws, including improperly operating its program without state approval, charging tuition and making loans in violation of the law as well as making misrepresentations in violation of the law, and that those violations constitute unfair trade practices. The CFPB and Lambda also agreed in the Consent Order that the ISAs and Lambda's advertising practices violated the law. Exclusion **12.b.** precludes coverage for such claims and RSUI expressly reserves all rights in that regard.

4.      The Policy's *Exclusion-Broadcasting, Advertising and Publishing* endorsement precludes coverage for Loss "arising out of or in connection with" any Claim, "alleging, arising out

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 11

of, based upon or attributable to, directly or indirectly or in any way involving: a. Publishing or re-publishing; [or] b. Advertising." All of the ISA Arbitration Claims allege Lambda is liable for misrepresentations in its advertising. The CFPB and Lambda also agreed in the Consent Order that Lambda's advertising practices violated the law. The Policy's *Exclusion-Broadcasting, Advertising and Publishing* endorsement precludes coverage for such claims and RSUI expressly reserves all rights in that regard.

5.    Exclusion **2.** precludes coverage for Loss in connection with any Claim, "Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any criminal or deliberate fraudulent act." All of the ISA Arbitration Claims allege Lambda has liability for intentional misrepresentations. Exclusion **2.** may precludes coverage for such claims and RSUI expressly reserves all rights in that regard.

6.    Exclusion **3.** precludes coverage for Loss in connection with any Claim, "Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining of any profit or advantage to which an Insured was not legally entitled." All of the ISA Arbitration Claims allege Lambda improperly charged tuition and made loans through ISAs in violation of the law. The CFPB and Lambda also agreed in the Consent Order that the ISAs and Lambda's advertising practices violated the law. Exclusion **3.** precludes coverage for such claims and RSUI expressly reserves all rights in that regard.

7.    Exclusion **7.** precludes coverage for Loss in connection with any Claim, "Alleging, arising out of, based upon or attributable to, in whole or in part, the performance or rendering of or failure to perform professional services, where such services are undertaken for others for a fee." Exclusion **7.** may apply to preclude coverage in whole or in part and RSUI expressly reserves all rights in that regard.

### III.    CONCLUSION

In sum, RSUI maintains its denial of the ISA Class Action because it was dismissed prior to tender. Additionally, it does not appear that the ISA Arbitration Claims are potentially covered. However, RSUI agrees to defend Lambda against the ISA Arbitration Claims under a full and complete reservation of rights through RSUI's choice of counsel.

The foregoing analysis is based on the materials that have been made available to RSUI and information presently known by it. RSUI reserves the right to supplement and/or modify the above-stated positions as appropriate as additional information becomes available and additional analysis is completed.  If there is any additional material RSUI should consider, or if you have any information or arguments that RSUI's position is erroneous, please provide such information to us as soon as possible.

Musick, Peeler & Garrett LLP

MusickPeeler

Lilit Asadourian, Esq.
BARNES & THORNBURG LLP
September 26, 2024
Page 12


If you believe RSUI's coverage position is incorrect or that it has wrongfully disclaimed coverage under the Policy, Pursuant to California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, Unfair Claims Settlement Practices Regulations, you may have this matter reviewed by the California Department of Insurance at the following address and telephone number:

California Department of Insurance
Consumer Services Division
300 South Spring Street
Los Angeles, California 90013
Telephone:  (213) 897-8921

The California Department of Insurance can also accept complaints over its web site at: www.insurance.ca.gov.

If you have any questions or wish to discuss this matter, please feel free to contact me.

Very truly yours,

David A. Tartaglio
for MUSICK, PEELER & GARRETT LLP

cc:     William J. Nielsen
        RSUI

        Chad A. Westfall
        MUSICK PEELER


2557153.1

Musick, Peeler & Garrett LLP